## Archibald *v.* Jewell, Appellant.

*Negligence—Parent and child—Use of air gun by child—Permission of parent—Contributory negligence.*

The court cannot say, as a matter of law, that an irresponsible boy with the full knowledge of his father, may possess and use, as an innocent toy, a device loaded with fifty BB shot, capable of being discharged with such force as to destroy the eye of a human being at a distance of fifty or more feet. It cannot be the test that such an instrumentality can be declared to be a toy merely because the propulsive force that discharges the pellet was compressed air rather than gunpowder. The negligence of the father in knowingly permitting his son to possess and use such a device, is a question for the jury.

Argued April 22, 1918. Appeals, Nos. 26 and 27, April T., 1918, by defendant, from judgment of C. P. Allegheny Co., April T., 1916, No. 2182, on verdict for plaintiffs in case of Thomas L. Archibald, in his own right, and as father and next friend of Clair T. Archibald, v. Thomas Jewell. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before MACFARLANE, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for Thomas L. Archibald for $300, and for George B. Archibald for $1,000. Defendant appealed.

*Error assigned* was in overruling motion for judgment for defendant n. o. v.

*William A. Challener,* with him *Joseph N. Huston* and *Clarence Burleigh,* for appellant.—In the absence of the relation of master and servant, which admittedly did not exist in this case, a father is not responsible for the negligence of his minor son and most certainly not for his intentional and malicious acts, committed without the father's knowledge or consent: Taylor v. Seil, 120 Wis. 32; Palm v. Ivorson, 117 Ill. App. 535; Harris v. Cameron, 81 Wis. 239; Chaddock v. Plummer, 88 Mich. 225; Malmberg v. Bartos, 83 Ill. App. 481; Edwards v. Crume, 13 Kan. 348.

*James G. Nevin,* with him *James M. Nevin,* for appellees.—Parents, as well as others, are bound to know and control or guard against the childish instincts and impulses of their children, and this rule has been recognized both by the courts and the legislature: Danbeck v. New Jersey Traction Co., 57 N. J. L. 463; Loughlin v. Penna. R. R. Co., 240 Pa. 174; Stehle v. Jaeger Auto. Mach. Co., 225 Pa. 348; Buiford v. Johnson, 82 Ind. 426; Boland v. Stanley, 88 Ark. 562; Burrell Twp. v. Uncapher, 117 Pa. 353; Sullivan v. Creed, 2 Irish Rep. 317.

OPINION BY HEAD, J., July 10, 1918:

The learned court below entered judgment on a verdict in favor of the plaintiff and the defendant appeals. There is assigned for error only the refusal of the trial judge to direct a verdict in favor of the defendant and thereafter to enter judgment in his favor non obstante veredicto.

We are urged to say that the case at bar is absolutely ruled by the case of Fleming et al. v. Kravitz, 260 Pa. 428. We have examined with care not only the published report of the case cited but as well the briefs of counsel and the evidence produced at the trial. The material facts upon which the judgment of the court rested are thus briefly stated by Mr. Justice STEWART: "A child of six years in playing with a toy air gun in the barrel of which, for some undisclosed reason, there was the stem of an ordinary match, discharged it, with the result that the match struck the corner of the eye of the plaintiff's boy who was standing within a few feet." It was held the record disclosed no foundation for a judgment that the father of the boy who discharged the gun had been guilty of any negligence and the judgment of the trial court in entering a compulsory nonsuit was affirmed.

It appears to us the record in the present case discloses material facts that readily distinguish it from the case cited. The present plaintiff had his eye destroyed by a metal shot of the size called BB discharged from a gun by the defendant. The distance that separated the two boys at the time of the injury was fifty or more feet. It is true the gun was an air gun. That is to say, the propulsive force that drove the shot was compressed air, not gunpowder. We suppose a court of law could not take judicial cognizance of the size and weight of a shot pellet of the class known as BB, but the jury had the pellet before them and therefore could determine the probable effect of such a missile when driven with force against a human body. According to the testimony the defendant's son had been operating a gun of this kind for a considerable period of time. He first had a cheaper and probably less powerful gun in which each pellet discharged had to be separately loaded. He sold that gun and procured another at more than three times the cost of the first which was a magazine gun and could be loaded with fifty BB shot at one time.

The defendant, the father of the boy, knew perfectly well of the latter's possession of the gun and his disposition to use it.  Some time before the accident he had taken the gun away from his son.  The latter testified that the reason for this action on the part of his father was "He did not want him to use it."  The father testifies he took the gun away because the boy was so interested in its use that he was neglecting some of his duties. It was further in evidence that after the accident the father declared "that he knew now that he was a fool allowing Charlie to get the gun."  This was denied by the father, but with any conflict in the testimony we are not now concerned.

We are asked then to say, as a matter of law, that an irresponsible boy, with the full knowledge of his father, may possess and use, as an innocent toy, a device loaded with fifty BB shot, capable of being discharged with such force as to destroy the eye of a human being at a distance of fifty or more feet.  We are unable to so say.  It surely cannot be the test that such an instrumentality can be declared to be a toy merely because the propulsive force that discharged the pellet was compressed air rather than gunpowder.  Compressed air lifts tons of water from the bottom of a mine to the surface; it drives machinery; it hauls trains of loaded mine cars, and is one of the effective methods by the use of which the powerful forces of nature are harnessed and utilized by man. The writer of this opinion daily sees, when the schools are in session, about a thousand children arriving and departing from their places of instruction.  To say, as a matter of law, that all of them, or any considerable number of them, could equip themselves, with the knowledge of their parents, with guns or toys of the character described by this evidence and use them at pleasure in their games and sports, would seem to be an inconceivable proposition.  Its results for mischief and injury would probably exceed those flowing from any epidemic that could occur.

247, (1918).]          Opinion of the Court.

We are of opinion therefore the question of the negligence of the father in knowingly permitting his son to possess and use such a device was a question for the jury and it was submitted to the jury in a charge of which there is no complaint. The assignments of error are overruled.

Judgment affirmed.