# CHARLESTON.

WALTER A. PRUNTY v. TYLER TRACTION COMPANY.

Submitted January 31, 1922. Decided February 7, 1922.

1.  WITNESSES—*To Justify Cross-Examination on Matters Not Stated in Direct Examination Party Must Call Witness as His Own.*

    A party has no right to cross-examine a witness not a party to the suit, except as to the facts and circumstances connected with the matters stated in the direct examination. If he wishes to examine him on other matters he must make him his own witness and call him as such in the subsequent progress of the trial. (p. 199).

2.  NEGLIGENCE—*Child's Contributory Negligence Depends on Age, Intelligence and Nature of Danger.*

    The law recognizes that children of tender years do not possess that judgment and discretion usually exercised by adults,

and whether under a particular state of facts they are capable. of understanding and appreciating dangers with which they are surrounded depends, not only upon the age and intelligence of the child, but also upon the nature of the perils to be encountered.   (p. 200).

3.  SAME—*Three Year Old Child Incapable of Appreciating Some Perils.*

While a child of the age of three years and three months might have sufficient capacity to understand and appreciate the dangers incident to some situations in which it would be placed, it cannot be said that such a child could appreciate and understand the perils incident to a situation which would require the exercise of foresight to anticipate the perilous condition as well as immediate action to avoid it after it arose.   (p. 201).

4.  STREET RAILROADS—*Three Year Old Child Not Chargeable with Contributory Negligence in Going Upon Track.*

A child of the age of three years and three months cannot be charged with contributory negligence in going upon a street car track in a busy street in front of a moving street car without first looking in the direction in which the car came, and the refusal of the court to submit the question of contributory negligence of such child to the jury under such circumstances is not reversible error.   (p. 201).

5.  SAME—*Lookout Required.*

It is the duty of a street railway company, in operating its cars over a public street of a city, to keep a careful lookout ahead for pedestrians who may enter upon its tracks, and when the operator of such car is not so stationed that he can observe the track in front of the moving car, or cars, it is the duty of such company to provide such lookout at a place where the track may be so observed, and the result of such observation immediately communicated to the employe in charge of the operation.   (p. 203).

6   SAME—*Failure to Keep Lookout Negligence as to Pedestrians.*

It is negligence for a street railway company to operate a freight car, attached in front of a passenger car, over its tracks through a public street of a city with no one on said freight car to keep a lookout for pedestrians who might enter upon its tracks; and such company will be held liable for damages resulting to a pedestrian struck by such car, where it appears that had such lookout been kept on the front end thereof the injured party would have been discovered, and the car stopped in time to avoid the accident, unless the injured party is guilty of contributory negligence.   (p. 203).

7.    SAME—*Company's Negligence Instead of Outcry by Third Person Held Cause of Injury.*

A street railway company will not be relieved of liability for injury inflicted upon a pedestrian in a public street of a city by running its car over him, because a third party, upon observing the peril of the injured party, gave an outcry of alarm which caused the injured party to stop suddenly upon the track, even though it appears that had such alarm not been given the injured party might have crossed the track in safety. (p. 201).

8.    TRIAL—*No Reversal for Incompleteness of Some Instructions of Themselves Where Instructions as a Whole are Complete.*

Where the instructions given in a case taken as a whole fairly and fully present to the jury the controlling propositions of law, a judgment rendered upon a verdict found by the jury will not be reversed because some of such instructions are not complete in themselves, unless in such incomplete condition they bound the jury to find a verdict for one party or the other without giving consideration to some material theory of the case. (p. 205).

9.    NEGLIGENCE—*Parents' Negligence Not Imputable to Child.*

The negligence of the parent or guardian having custody and control of an infant in exposing it to danger will not be attributed to the child so as to preclude its right of action against a third person by whose negligence it is injured. (p. 202).

Error to Circuit Court, Tyler County.

Action by Walter A. Prunty against the Tyler Traction Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*M. H. Willis,* for plaintiff in error.

*Underwood & Moore,* for defendant in error.

RITZ, JUDGE:

By this writ of error the defendant seeks reversal of a judgment in favor of the plaintiff for damages for a personal injury sustained by him by being run over by one of the defendant's street cars operated over one of the streets of the city of Middlebourne.

The defendant company operated an interurban electric railway line extending from Sistersville, in the county of Tyler, to and over the main street of the city of Middlebourne in said county. On the 26th of September, 1918, the plaintiff, an infant three years, three months and twenty-six days old, was struck by one of the defendant's cars upon the main street of said city of Middlebourne, and received injuries which resulted in the loss of a part of one of his feet.

The equipment operated by the defendant company at the time of the injury consisted of a passenger car attached to which was a freight car called a trailer. The motive power was electricity and was applied to the passenger car only, the freight car being either pulled or pushed by the passenger car, depending upon the order in which the cars, were operated. On the occasion of the accident two cars joined together had come from Sistersville to Middlebourne, the passenger car in front being operated by a motorman on the front end thereof. The run was continued in this order along Main Street in the city of Middlebourne, the cars stopping at such places as there was freight to unload or passengers to alight, until the terminus of the line was reached at a point near the courthouse in said city. When this point was reached the motion of the cars was reversed, and they were run in the opposite direction to what is known as Broad Street, at which point there is a switch running out to a freight station. The cars were run out on this switch and the freight remaining unloaded in the freight station. The position of the cars in relation to each other was then reversed so that on the return trip to Sistersville the passenger car would be in front and the freight car behind, and preparatory to starting on this return trip the cars were again run out on the main line and backed on Main Street with the freight car in front and the passenger car shoving it in order to pick up passengers and freight between the point where they came on the main line and the courthouse. While thus backing down the street toward the courthouse with the freight car in front, as the cars were then running, the plaintiff was struck at a point just

opposite his home, one of the wheels of the car running over one of his feet, so badly crushing it that part of it had to be removed.

It seems that a man by the name of Smith who owns a Ford touring car had gone with the plaintiff's father and the plaintiff and his sister, another child of tender years, into the country on the day of the injury, and had just returned. The plaintiff's father brought back a sack of apples. He had gotten out of the automobile and had crossed the street to his house. Mr. Smith, the owner of the car, had also gotten out, and the plaintiff, instead of going with his father across the street to his home, remained for a short time with Mr. Smith. Smith testifies as a witness that the boy walked around the automobile with him, and that he walked past the front end thereof for the purpose of turning into an alley to the rear of his premises, and that just as he was turning into this alley he turned his head toward the street car track and saw the plaintiff thereon with the cars approaching within a few feet of him. He immediately made an outcry and ran to the boy and succeeded in jerking him off the track, but not in saving him from injury, one of the wheels of the freight car on the side next to Smith catching the boy's foot and mashing it off.

The contention of the defendant company is that it was not negligent in the operation of the cars over the track in the manner above indicated. At the time of the accident there was no one on the freight car. The motorman on the passenger car was on the front end thereof, and on the side opposite to that upon which the boy entered upon the track, but contends that he was looking ahead on that side. On the front end of the passenger car on the same side upon which the boy entered upon the track it seems that there were two employes of the defendant stationed. These employes were standing on the lower step of the passenger car looking ahead, and one of them who testified as a witness, the other being dead, says that he was looking ahead and saw this boy coming from immediately in front of the automobile and called to the motorman to stop; that the emergency brake was immediately applied, and that the car stop-

ped within a very few feet; that the boy came from in front of the automobile only a few feet in front of the freight car, and that the cars could not be stopped in time to avoid the accident. On the other hand, witnesses testify for the plaintiff that the point at which the boy came upon the track was quite a little distance from the front of the automobile. Mr. Smith who had a better view of the accident than anyone else measured the distance afterwards, and says that it was about 25 feet from the front of the automobile to the point on the curb where the boy crossed the street, and about 36 feet from the front of the automobile to the point on the track where the accident happened. In this he is corroborated by other witnesses. Upon the trial of the case the jury rendered a verdict in favor of the plaintiff for the sum of $4500.00, upon which the court rendered judgment.

One of the principal assignments of error is based upon the refusal of the court to permit the plaintiff's mother, upon cross-examination, to answer certain questions in regard to what instructions and advice had been given the boy in regard to crossing the street in front of the street car, and to the action of the court in instructing the jury that the plaintiff could not be guilty under the circumstances of contributory negligence, and refusing to instruct the jury that they might find him so guilty. The evidence rejected upon this point, if it can be said to be at all material, was sought to be introduced by cross-examination of the plaintiff's mother introduced as a witness on his behalf. It was in no sense pertinent to anything she had testified about in chief, and for this reason alone it was not error for the court to reject the evidence. *State* v. *Hatfield,* 48 W. Va. 561. The defendant, however, was permitted upon cross-examination to examine the boy's mother as to his capacity and general mental fitness. She testified in answer to questions of defendant's counsel that while the boy was rather "babyish" she thought he possessed the intelligence of the average boy of his age. It is earnestly insisted by the defendant that under the facts shown the question, whether the child was guilty of contributory negligence, should have been left to

the jury, and an instruction was offered by the defendant upon this theory of the case, which the court refused to give, but did give an instruction for the plaintiff in effect telling the jury that he could not be guilty of contributory negligence under the circumstances. It is argued by the defendant's counsel that in no case is it proper for the court to declare as matter of law that a child, because of his youth, may or may not be guilty of contributory negligence barring a recovery for an injury, while for the plaintiff it is contended that this Court has held in many cases, which are cited, that children of very tender years cannot be guilty of such negligence, and in the case of *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726, specifically held that an infant under the age of 7 years could not be guilty of such contributory negligence as would bar recovery of an injury received by him. There are many cases in which it has been said that the question whether or not an infant under particular circumstances was guilty of such negligence as to bar recovery was for the jury. In most of these cases, however, it will be found that this doctrine was announced in response to a contention that the court should have declared the guilt as matter of law. We think there may be cases in which an infant even of the tender years of the plaintiff might possibly be guilty of contributory negligence if the jury should so find, but whether or not in a particular case the court is justified in submitting the question to the jury depends, not only upon the age of the infant and his intelligence, but in a large measure upon the nature of the danger from which the accident resulted. It will hardly do to lay down any arbitrary rule to the effect that a child under a certain age cannot under any circumstances be guilty of contributory negligence, nor can it be said that an infant of the tender years of the plaintiff in this case might be found to be guilty of contributory negligence under any and all circumstances. We think the nature of the danger encountered and to be avoided is as much an element to be taken into consideration in determining whether or not the infant could be guilty of contributory negligence as is his age and mental capacity. Ordinarily we would say that it would

be better to submit the question to the jury, for rarely, if ever, will a jury, when properly instructed, attribute to an infant of the tender years of the plaintiff contributory negligence such as to bar a recovery for an injury sustained by him, unless the circumstances are such as to mandatorily require such finding. But can it ·be said in this case that the judgment should be reversed because the court failed to submit this question to the jury and instructed them that the plaintiff could not be guilty of contributory negligence as matter of law? Suppose the question had been submitted to the jury, and the jury had found specifically that the defendant was negligent, but that the plaintiff was barred from recovering because he was guilty of contributory negligence, would this Court have sustained such a verdict? We think not. ˙ It may be argued by counsel that to run in front of a moving street car is such a throwing of one's self into danger as that even a child three years of age would not attempt it. And this might be true if this was the only element to be taken into consideration, but in this case the things which the plaintiff would have had to do to prevent injury would have been to stop and look for approaching street cars before entering upon the street. This process would have called into exercise the use of mental faculties rarely, if ever, possessed by children of the age of this plaintiff. We are of opinion, therefore, that while there may be circumstances under which a child of the age and mental capacity of the plaintiff may be guilty of contributory negligence, yet under the circumstances which resulted in the accident producing his injury in this case the jury· could not be allowed to find that he was so guilty, and if this is true then there was no prejudicial error in giving the plaintiff's instruction complained of and in refusing the one asked by the. defendant.

Another matter relied upon by the defendant is that the witness Smith was the efficient cause of the accident for, as it contends, if he had not given a cry of alarm when he observed the plaintiff on the track immediately in front of the car the accident would not have happened. It appears that at the time Smith first observed the plaintiff on the

track the approaching car was just a few feet from him, but running at a very low rate of speed, the motorman in charge says about 2 1-2 miles an hour, another witness testifying that the speed was about that of a brisk walk, or about 3 miles an hour, and it is argued that if the plaintiff had continued on his way across the street instead of stopping in the track when Smith called out he would have gotten across the track before the car reached the point at which the accident happened. It is argued from this that Smith's action in crying out upon observing the boy's peril was the efficient cause of his injury, and not any negligence upon the part of the defendant. It does not seem to us that there is any merit whatever in this contention. That Smith did give a cry of alarm when he observed the boy's peril is admitted, and that the boy stopped is likewise admitted. The purpose of this cry, if it could be said to have a distinct purpose, as Smith states, was to attract the attention of the men operating the car, and cause them to stop it before striking the boy. If it can be said that he could be charged with the necessity of electing whether he would remain silent and attempt to rescue the boy only by dragging him off the track, or in addition call out to give notice of the peril to those operating the car, and that he made a wrong decision, still, on account of the circumstances under which he was required to act, and the immediate necessity of some action, he would not be held to that strict requirement of correct decision which might be required of him were he given sufficient time to weigh all of the consequences likely to result from his action one way or the other. The same doctrine which does not attribute to a plaintiff negligence in choosing a wrong course when one of two courses of action are left open to him, and he is required to make immediate choice in the face of peril, applies to the action of Smith on this occasion. Manifestly, if it can be said that his action contributed to the injury of the plaintiff, it was of that character which cannot be characterized as negligent because of the necessity for immediate action in the presence of eminent danger.

Another ground of error is the action of the court in

refusing to instruct the jury in effect that if the plaintiff's
parents were negligent in allowing him on the street under
the circumstances he could not recover from the defendant in
this case.   Counsel for defendant does not press this assign-
ment of error, but says in his brief that sometime, in a pro-
per case, this Court will decide in consonance with human
psychology, that third persons may rely upon parents taking
at least as high a degree of care for the protection of their
children as is required of strangers.   It would be sufficient
answer to this argument to say that this Court has long
since recognized the doctrine that parents are under an obli-
gation to take at least as high a degree of care of their child-
ren as are strangers, and in the cases of *Dickinson* v. *Stuart
Colliery Company,* 71 W. Va. 325, and *Swope* v. *Coal &
Coke Co.,* 78 W. Va. 517, denied recovery for the benefit of
the parents of children killed by the negligence of the de-
fendants on the ground of the negligence of the parents in
their conduct toward their children, but we are not yet
ready to announce as matter of law that, because a parent
is negligent or careless in caring for his infant child, another
by whose negligence or carelessness such child sustains an
injury will not be answerable in damages to the child as a
result thereof.   The negligence of one party who owes a
duty to another can afford no license to a third party to
negligently inflict injury upon such other.   20 R. C. L.,
title ''Negligence'' § 129 and authorities  there  cited;  29
Cyc. p. 553; *Dicken* v. *Salt Co.,* 41 W. Va. 511.

, Complaint is made of the refusal of the court to allow
witnesses for the defendant to testify as to whether or not
an iron stirrup or step on the front of the freight car, as
the same was being moved on the occasion of the accident,
was a proper place for a lookout.   We do not think this
evidence was at all material.   If there was no proper place
upon the front of this freight car for a lookout while the
same was being backed over the public street of the city
where people were crossing and recrossing, and where ve-
hicles were allowed to stand on either side next to the curb,
then the defendant was negligent in not having such a prop-

er place for a lookout; and if there was a proper place for a lookout on the front end of the car, then it was negligence in not having a lookout stationed there. The duty of a street railway company in operating cars over its tracks in a city street is quite different from the duty of a steam railroad in operating trains over its private right-of-way. In the former case the company is bound to take notice of the rights of the public who use the street, and it is under a high degree of care when operating its cars thereover to keep a careful lookout for those properly using the street, and to use such means as may be necessary or available to prevent injury to them. In this case the defendant company was bound to know, as the evidence shows, that this street was a very busy street; that automobiles were allowed to be parked on either side of it next to the curb, and that pedestrians crossed and recrossed it at very frequent intervals, and it may be said that to operate its cars over its tracks under the circumstances shown in this case, that is without any lookout on the front thereof to discover pedestrians coming on or in close proximity to the track from behind obstructions which might be allowed to stand upon the street, was the grossest kind of negligence. It matters not whether the defendant had a place provided on the front end of this car at which a man might be stationed to observe pedestrians coming on or in close proximity to the track. If it did not have it ought to have had. Nor does it do to say that in this case, even though there was not a lookout on the front end of the freight car, the plaintiff would not have been discovered any sooner than he was. This may be true if the jury had believed the theory of the defendant's employe who was looking ahead from the front end of the passenger car. If as a matter of fact the plaintiff came from immediately in front of the standing automobile, and a view of him was obstructed in any event until he passed the automobile, then it may be that the defendant could not have avoided the accident, even though a lookout had been provided on the front end of the freight car; but if, as is testified to by all of the other witnesses, the plaintiff started across the street at some little distance in front of the auto-

mobile, it is very patent that a lookout on the front end of the freight car would have discovered the plaintiff when the front end of the freight car was at a point upon the track at which the front end of the passenger car was at the time he was actually discovered by the defendant's employe, and it is clear from the evidence that if the defendant's employes had discovered the plaintiff's peril when the front end of the freight car was at the point where the front end of the passenger car was at the time he was discovered, the cars could have been stopped, and no injury would have resulted.

Another assignment of error is based upon the action of the court in giving to the jury plaintiff's instruction No. 1 as follows: "The Court instructs the jury that the negligence, if any, of the parents of the plaintiff child is no defense against his right to recover against the defendant, neither is the negligence of any person who may have been in control of the plaintiff child at or near the time of the accident a defense against his right to recover." The objection urged to this instruction is that it assumes that the plaintiff has a right to recover, and does not leave this question to be determined by the jury; and also that it tells the jury that the negligence of the plaintiff's parents could not be attributed to him. This latter ground we have already disposed of. It will be observed that this is not a binding instruction and is directed only to informing the jury upon the question of the effect of the plaintiff's rights as affected by the negligence of his parents. Many other instructions were given in the case, both for the plaintiff and the defendant, which correctly laid down the basis for recovery. All of the instructions must be read together. This instruction says no more to the jury, when read in connection with the other instructions given, than that no effect shall be given by the jury, in coming to a conclusion, to any negligence or carelessness upon the part of the plaintiff's parents. It is impossible for us to conceive how the jury could have been misled by this instruction.

The action of the court in giving plaintiff's instruction No. 4 is also assigned as error. It does not seem to us that

this instruction is subject to any criticism unless it would be error to tell the jury that there was no presumption that an infant of the age of the plaintiff would exercise due care for his safety. We have already discussed this question of contributory negligence upon the part of the plaintiff, and the views we have expressed in regard thereto clearly justify the giving of the instruction containing that declaration.

The defendant complains that the court erred in giving plaintiff's instruction No. 5, the complaint being that this instruction told the jury that it was the duty of the defendant to omit nothing which could have been done by it, its agents, employes and servants, to prevent injury to the infant plaintiff while upon said Main Street. It is argued that this was in effect telling the jury that the defendant must entirely withdraw its traffic from Main Street if thereby it could avoid injury to children crossing the same, or that the jury could find that it must do anything within the range of possibility, even to the extent of requiring it to surround its cars with armed guards while operating them over the streets, to avoid injury. Of course, no such strained or forced construction as this was ever placed upon the instruction by the jury. It simply means, and especially is this true when read in connection with other instructions given, that the defendant must use every reasonable means in its power to prevent injury to pedestrians, and particularly to children, while operating its cars upon Main Street, consistent with the proper operation thereof.

Complaint is made that instruction No. 6 tells the jury that it was the duty of the defendant to keep a careful lookout for children while operating its cars over Main Street while, to be proper, it should have told the jury that it was defendant's duty to keep a proper lookout for the plaintiff. The argument is that the instruction is general, and is based upon the duty of the defendant toward all children instead of limiting it to its duty to the plaintiff under the particular circumstances. It is quite true that the instruction does tell the jury what the duty of the defendant is toward children situated as the plaintiff was at the time, and by so doing it necessarily told them its duty

toward the plaintiff. Even though the instruction is general, still the proposition of law it contains applies to the particular circumstances submitted to the jury for consideration. It was not error to give it.

Complaint is made of the action of the court in giving plaintiff's instruction No. 7 as follows: "The Court instructs the jury that the defendant company, operating its cars on Main Street in the Town of Middlebourne, had no exclusive right of the use of said street or the part used by it, and that the infant plaintiff had as clear and firm a right to cross or be upon said Main Street at the point where he was injured as the defendant had to operate its cars there." The objection to this instruction is that it does not point out to the jury that the street railway company has a preferential right in that part of the street occupied by its tracks. The purpose of the instruction and the effect of it, as will be clearly seen, was simply to advise the jury that in going upon the defendant company's tracks the plaintiff was not a trespasser; that notwithstanding the right of the defendant to run its cars over the streets upon its tracks, that right was not exclusive; that pedestrians or others desiring to use the street still had the same right upon that part of it occupied by its tracks that the defendant had. We do not think there is anything wrong with this instruction when it is read in the light of all of the other instructions given in the case.

The giving of plaintiff's instruction No. 8 is also complained of. The instruction told the jury that the failure of the defendant to keep a proper lookout for children on and in close proximity to the track in said Main Street under the circumstances shown in this case was negligence. It is complained that this instruction assumes that the defendant did not keep such proper lookout. There might be something in this criticism taking the instruction by itself, but other instructions carefully define the duty of the defendant in that regard, and this instruction could not be misleading on that account. But even though this instruction is construed as telling the jury that the defendant did not keep a proper lookout under the circumstances, we think it can

be justified. Admittedly there was no one on the freight car being propelled in front of the passenger car at the time of the injury and, as we have said before, we think it was negligence on the part of the defendant company to operate its cars over a much used public street in that condition.

Instruction No. 9 given on behalf of the plaintiff is also complained of. It states the same proposition of law contained in No. 8 in a little different form, and while there was, perhaps, no necessity for giving it, we are not disposed to hold that it was reversible error to repeat the proposition on the motion of the plaintiff, particularly in view of the fact that most of the legal propositions relied upon by the defendant in the case are given to the jury more than once.

A number of assignments of error are based upon the action of the court in refusing to give instructions offered on behalf of the defendant. The legal propositions contained in quite a few of these instructions are embodied in those given upon the defendant's motion. What we have said as to the law controlling this case sufficiently indicates the propriety of the court's refusal to give the others, and it would serve no useful purpose to discuss them in detail.

Defendant's final insistence is that no negligence has been shown entitling the plaintiff to recovery against it. It insists that it sufficiently appears from the evidence that, regardless of whether there was a duty upon it to have a lookout upon the front end of the freight car, this boy was actually seen by those in charge of the car as soon as he could have been seen in any event; that he ran on the track immediately in front of the automobile which obscured the view of the defendant's employes, and would have obscured the view of anyone, even though stationed on the front end of the freight car. If this evidence was uncontradicted the defendant's contention might be correct. This theory is supported by the testimony of one of its employes. Several witnesses, however, on behalf of the plaintiff testify to a very different state of facts. They say that instead of the plaintiff crossing the street immediately in front of the auto-

mobile, the point at which he crossed was at least 25 feet in front thereof, and that a man on the front end of the freight car could have seen the plaintiff when the front end of that car was no further down the track than the front end of the passenger car was at the time the plaintiff was actually discovered by defendant's employe. If this was the state of facts, and the decided preponderance of evidence indicates that it was, then it is very apparent that had there been a lookout on the front end of the freight car the plaintiff's perilous position would have been discovered and the cars stopped before coming in contact with him. As to what the facts were in this regard was for the jury under the evidence, and their finding, based as it is upon a substantial preponderance of the evidence, will not be disturbed by this Court.

We have carefully reviewed all of the assignments of error, and while we have not adverted to each of them specifically in this opinion, what we have said, we think, sufficiently dispose of them. We find no error prejudicial to the defendant, and the judgment complained of is therefore affirmed.

*Affirmed.*