CLYDE CRAFT, *Infant, v.* FORDSON COAL COMPANY *et al.*

(No. 7635)

Submitted October 31, 1933. Decided November 14, 1933.
(Rehearing denied December 29, 1933)

Kenna, Judge, dissenting.

*Sale, St. Clair & Sale,* for plaintiff in error.
*Harman & Howard,* for defendants in error.

Hatcher, Judge:

The plaintiff seeks to recover damages for personal injuries from contact with electric wires of the defendant, Fordson Coal Company. The circuit court directed a verdict against him.

The accident occurred about five-thirty o'clock P. M., on March 16, 1932. The plaintiff was then aged eighteen years and ten months. He had climbed in play upon the roof of a building leased as a garage from the coal company by his father· (an employee of the company). Some uninsulated electric wires were strung about three feet above the ridge of the roof. After playing· (on the roof) from ten to fifteen minutes, plaintiff unwittingly thrust his head against the wires and received a severe shock. He says he did not know the wires were there.

The ridge of the roof was thirteen feet high measured from inside the garage, and the eaves were estimated to be from eight to nine feet from the ground. The roof was almost flat for a space extending back from the eaves (distance not given), then rose at about 35° to the ridge. The building had formerly been used by the company as an electric sub-station, and when abandoned for that use, two steel bolts about a foot in length were left protruding from the back wall. Plaintiff says he reached up about two feet to grasp the first bolt; that the second bolt was two or three feet higher and by using the bolts and some cracks in the wall, he managed to clamber to the

roof. It was proved that children habitually played on the roof; but it was not shown that any of the company's representatives knew of that diversion, or that any child had ever received an electric shock. Plaintiff had worked in and around mines for some two years and knew the use and the danger of electric wires. His father's residence was about 150 yards up the hill from the garage. Plaintiff admitted that he knew electric wires ran by the residence and down the hill in the direction of the garage; that he had noticed a pole—such as electric wires were strung on—standing some seven feet from the garage, and that nothing prevented him from observing the wires over the garage if he had looked. A witness (for plaintiff) testified that another boy "hollered" to plaintiff just before he got into the wires, "You better watch out there Clyde!" This evidence was not denied or explained by him.

Plaintiff takes the position that leaving the bolts in the wall of the garage was in effect an invitation to climb the wall, and that in stringing uninsulated wires so close to the roof the company failed to use due care to make the place safe for invitees. He also insists that he was at a place where he had a right to be, that he had no reason to anticipate the proximity of the wires, and therefore was not negligent in failing to observe them.

The plaintiff advanced the same positions before the circuit court as here. The learned trial judge handed down a written opinion in which he expressed doubt as to whether the proof disclosed any negligence on the part of defendants. He distinguished this case from one in which an infant had been injured under like circumstances. "But for the sake of argument" (only), he assumed that due care had not been used in locating the wires, and after detailing the plaintiff's experience in and around coal mines and his knowledge of electricity, continued:

"If he (plaintiff) had looked there is no question but what he could have seen these wires and his failure to do that does not relieve him from the duty to exercise ordinary care for his own protection. If he had looked and observed the wires he could have determined that they were uninsulated and his knowledge of electricity and his experience in and

> about the mines where electricity was used would have placed him on notice that to come in contact with those wires would result in injury to him. He states in his testimony that if he had seen the wires on top of the building he would not have run into them and when asked by the court why he would not have run into them he said, 'Because they were dangerous and they would kill me.' The court is of opinion that the plaintiff in this case, due to his age, knowledge and experience is chargeable with the same degree of duty for his own safety as would be required of an adult and by the application of the principles of law pertinent in such a case as this, the court is of opinion that the plaintiff is guilty of contributory negligence as a matter of law and therefore not entitled to recover from the defendants."

Counsel contend that the above expression that plaintiff was guilty of "contributory negligence" implies pre-existing primary negligence on the part of defendants and makes the question one for the jury. Counsel overlook that the circuit court had refused to find defendants negligent, but had assumed such negligence, as shown above, *merely for the sake of argument.*

The ruling of the circuit court is so obviously sound that little need be added. It would be supererogation to review the authorities, since we have done so in many recent cases. See particularly *Maggard* v. *Power Co.,* 111 W. Va. 470, 163 S. E. 27. The law is settled, as therein stated, that those who maintain electric wires carrying a dangerous voltage, are required to exercise care commensurate with the danger; but they are not insurers against all injuries from the wires; and the test of their liability in case of injury is *whether a person of ordinary prudence would naturally have anticipated it.* See generally the well-considered case of *Austin* v. *Public Service Co.,* 299 Ill. 112, 132 N. E. 458, 17 A. L. R. 795.

The situation here must of course be regarded prospectively and not in retrospect. The wires were sixteen feet from the ground and at a place not frequented by the public at all, and to which an adult would not ordinarily be expected to go except to repair the roof. A housetop is itself a precarious place. Defendants had the right to assume that one mounting even to the flat part of the garage roof would make observa-

tions for his own safety. In such case the wires would be almost level with his vision, but a short distance from him and necessarily discernible. Therefore it could not be reasonably anticipated that a person on the roof would encounter the wires inadvertently. It may be admitted that plaintiff had the legal right to climb upon the garage, but that right alone did not require the coal company to insulate or elevate the wires, since they were plainly visible. Such a requirement would make the company an insurer (a burden not imposed by law). Because of his age and experience the plaintiff herein is not entitled to any of the legal indulgences extended a child of tender years. *C. & O. Ry. Co.* v. *Saunders,* 116 Va. 826, 83 S. E. 374. It is asking too much of ordinary prudence to require that defendants should have anticipated (1) that a young man familiar with electric wires and familiar with the local situation would overlook what was seemingly remarked by the entire neighborhood including the children—that the wires passed over the garage; (2) that he would move around for ten to fifteen minutes on the roof of the garage in close proximity to the wires and still not notice them; and then (3) despite warning from a companion heedlessly climb into them. Even the children who played on the roof were more perceptive. The law requires no one to anticipate an act so unobservant of surroundings by one beyond the age of childhood. *Nutter* v. *C. & O. Ry. Co.,* 113 W. Va. 94, 166 S. E. 815, 817. The law ordinarily charges a person of unimpaired vision with seeing an object, ''which if he had used his senses, he in the nature of things must have seen.'' *Fulton, etc.* v. *Stichel,* 135 Md. 542, 109 A. 434, 437. Accord: *Johnson* v. *Washington Route,* 121 Wash. 608, 609-11, 209 P. 1100; *Seabridge* v. *Poli,* 98 Conn. 297, 301, 119 A. 214; *DeHoney* v. *Harding,* 300 Fed. 696.

The facts in this case are not in dispute, and should lead all reasonable minds to the same conclusions. Therefore, it was proper for the trial judge to say as a matter of law whether the facts presented a case of actionable negligence. ''When in actions for negligence, the facts are undisputed and such that all reasonable minds must draw the same conclusions from them, it is the duty of the judge to say, if asked, as a matter of law, whether or not they make a case of actionable

negligence.'' *Ketterman* v. *Railroad Co.*, 48 W. Va. 606, 37 S. E. 683. See the wealth of authority contained in the opinion. Accord: *Donald* v. *Coal Co.*, 86 W. Va. 249, 103 S. E. 55; *Krodel* v. *Railroad Co.*, 99 W. Va. 374, 128 S. E. 824; *Jackson* v. *Ry. Co.*, 110 W. Va. 568, 159 S. E. 517.

The judgment of the circuit court is affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

The trial court, at the conclusion of plaintiff's evidence, sustained a motion to direct a verdict for the defendant. From the judgment entered on that verdict, plaintiff below prosecutes error.

The case is here as though the defendant below had demurred to the evidence. All doubts are to be resolved in favor of plaintiff below. *Schwarzbach* v. *Pro. Union*, 25 W. Va. 622; *Woodell* v. *W. Va. Imp. Co.*, 38 W. Va. 23, 31, 17 S. E. 386.

The court below expressly found that there was doubt as to the negligence of the defendant: ''The court is uncertain as to whether negligence on the part of the defendant has been shown for the reason that it is doubtful whether the defendant should have anticipated that a young man of the age and experience of the plaintiff would climb on top of a building in the manner in which the evidence discloses this plaintiff reached the top of said building and then blindly and carelessly walk into live wires.'' The conclusion of the trial court as to defendant's negligence seems to be sound, because the roof of a building is a place to which it may reasonably be anticipated human beings will go, it being shown in this case that it was a matter of almost common knowledge in the neighborhood that children frequented this roof for play. See 9 R. C. L. 1213, where it is said:

> ''It has been held however that one who goes upon a roof over which electric wires are stretched cannot be regarded as going into the presence of known danger and assuming the hazards thereof, and as forfeiting his right to recover for injuries suffered from the negligence of the company maintaining such

wires in not keeping them properly insulated. It is a matter of common knowledge that persons frequently resort to such a place, and it may be reasonably anticipated that persons will *go* there.''

See also the cases, including particularly, *Clements* v. *Louisiana Electric Light Co.*, 44 La. Ann. 692, 11 So. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348, and *Runyan* v. *Kanawha Water, etc., Co.*, 68 W. Va. 609, 71 S. E. 259, 35 L. R. A. (N. S.) 430, cited to sustain the text, and the references to notes in American State Reports, Lawyers Reports Annotated, both old and new series, and Annotated Cases.

The matter of getting the wires beyond danger seems to have been the simple thing of raising them six or eight feet above the ridge of the roof on an insulated prop. But the court below sustained the motion of the defendant upon the ground that plaintiff was guilty of contributory negligence as a matter of law. This finding necessarily admits the negligence of the defendant. There can be no contribution of negligence without pre-existing primary negligence to which it contributes. *Charleston* v. *DeHainaut,* 95 W. Va. 202, 120 S. E. 524. So that both by the direct finding of the lower court and by the logical consequence of dealing with the case on the basis of plaintiff's contributory negligence, we know that defendant's negligence was at least a jury question.

Then the only question for this court to decide is: With all of the fair inferences from the testimony decided in his favor, was plaintiff, *as a matter of law,* guilty of contributory negligence? He may, as a matter of fact, have been guilty of such negligence, so that a verdict for the defendant, if rendered, would not be disturbed, but in order for him to have been so guilty as a matter of law, the proof must be in such state that all reasonable minds would unite on that conclusion. *Daniels* v. *C. & O. R. R. Co.*, 94 W. Va. 56, 59, 117 S. E. 695.

In order to be found guilty of contributory negligence, either as a matter of fact or as a matter of law, plaintiff must have known of the danger or at least must have had reasonable ground to anticipate it. *Fowler* v. *R. R. Co.*, 18 W. Va. 579; *Woodell* v. *W. Va. Imp. Co.*, 38 W. Va. 23, 40, 17 S. E. 386.

302

As to whether he, in fact, knew of the unprotected live wires at a point three feet above the ridge of the roof (seven to eight feet above the flat part of the roof, hence well above plaintiff's head there, although his height does not appear in the record), we have his reiterated express denial. At page 56, Record: "Q. 127. You say you didn't know any wires were up there at all? A. No, sir, I didn't know they were even down there." At page 59, Record: "Q. 163. Did you see them when you went up there? A. No, sir, I saw them afterwards. Q. 164. You didn't see them when you were on the roof? A. No, sir, I didn't even down to know they were there." At page 61, Record: "Q. 192. Had you ever been up on that building before? A. No, sir." At page 67, Record: "Q. 285. If you had seen the wires there you would have known they were dangerous and stayed away? A. Yes, sir." On cross-examination, at page 71, Record: "Q. 14. There was nothing to prevent you while standing on your porch at your home looking at these wires from seeing that they crossed over this garage building was there? Nothing to shut off your view? A. Well, I didn't know where they went to. I hadn't never paid no attention." At page 77, Record: "Q. 88. And during all of that time now you tell the jury that notwithstanding the fact that you knew there were wires in that vicinity— A. I knew that they came from the house down that way somewhere. I didn't know where." Against this testimony, we have circumstances developed by questions of the court itself (the court addressed 108 questions to plaintiff) tending to show, but by no means proving, that plaintiff had, and proving that he *could have gained*, this knowledge. He knew the wires ran by his home in the direction of the building where the injury occurred. (His home was 150 to 200 yards away.) He knew a pole, such as usually is placed to carry wires, stood near the garage where he was playing when hurt; from working in the mines, he knew the danger of high voltage electric current, and that a contact with a human being making a circuit or ground would cause shock. Certainly, on the question of actual knowledge of the presence on the roof of these dangerous wires, these circumstances are at most in conflict with his direct denials of knowledge, making a pure jury question.

Explanatory of this conflict, we have testimony tending to show that the pole in question had no wires on it at the time of the injury. Record, p. 107. On the basis of his *knowledge* and *experience,* the trial court put plaintiff unqualifiedly in the class of an adult as to contributory negligence, but it may, nevertheless, be doubted that an exuberant youth reckless enough to play at corncob battle on the roof of a building had adult *appreciation of and prudence to avoid,* danger. Judgment and discretion are just as much faculties that a person under age must possess to be chargeable with contributory negligence, as are experience and knowledge. *Prunty* v. *Traction Co.,* 90 W. Va. 194, 110 S. E. 570. The capacity of one under age to be guilty of contributory negligence rests upon presumptions of fact, and, hence, is primarily a jury question. *Ewing* v. *Lanark Fuel Co.,* 65 W. Va. 726, 732, 65 S. E. 200. It seems clear to me that with the inferences on these questions viewed most favorably to plaintiff, they were for the jury as a matter of fact, and not for the court as a matter of law, to decide.

Was there legal reason for plaintiff to carry in mind his knowledge of the danger of electricity and its action when he went upon the roof to fight his corncob battle? Must he, *as a matter of law,* anticipate the dangerous presence of live wires? The negligence of the defendant, which, as we have seen, must be assumed in dealing with the plaintiff's alleged contributory negligence, consisted *in having those wires where they had no business to be, or in having them unguarded.* Must plaintiff anticipate, in the absence of actual knowledge, that they would be where they had no business to be, or that they would be unguarded? I think not. To the contrary, he had a right to assume that defendant's duty not to have them in a dangerous proximity to a place where people had a right to be, would be performed, or that, if there, they would be guarded. *Ritter* v. *Hicks,* 102 W. Va. 541, 545, 135 S. E. 601.

It is said that a warning was shouted at him by a playfellow. That was at the moment of contact. Record, page 112. There is no proof that it came in time to avail, or that plaintiff actually heard the warning at all. It is pointed out that had he looked in the direction of the wires he would have seen them, but no reason to look nor a duty to look is shown

unless he must anticipate a failure on the part of the defendant to do its duty, which is not the law. The cases cited to sustain this view of defendant are where there was a duty to look by reason of a known danger or one reasonably to be anticipated.

I conclude that the defendant's negligence as a jury question stands established by this record, by the method of dealing with the case in the court below, and by its consideration in this court. I see no basis in the record for the position that, with all inferences drawn in his favor, all reasonable minds must unite upon the existence of contributory negligence of the plaintiff. The trial court itself showed misgivings along this line that seem to be hardly consistent with that certainty of conclusion which alone justifies taking a case from the jury: "Gentlemen of the jury, you will understand that this is your verdict under the instructions of the court. *Some of you may differ with the court.* You may think that this is a case which you should decide, but the court being of the opinion that if you returned a verdict for the plaintiff, it would be the duty of the court to set aside that verdict, it then becomes the court's duty to direct a verdict for the defendant. If the court be in error in this respect then the responsibility is taken by the court and not you. If the court has erred in instructing you to return a verdict for the defendant, then the Supreme Court can correct any error made and if this case presents a question for a jury, it will be remanded to this court at a later date to be tried in accordance with the directions of the Supreme Court."

On the testimony contained in this record, plaintiff might lose his case before a jury either because he has not shown by a preponderance that the defendant was negligent or because the proof might be construed by the jury as showing plaintiff's own negligence. The trial court has indicated clearly that he considered the first matter a jury question. I am clearly of the opinion that the second was also a jury question.

I would, therefore, reverse the judgment, set aside the verdict and remand the case for a new trial.