LEO MAZZOCCHI, *Infant, etc. v.* EARL M. SEAY *et al.*

(CC 677)

Submitted January 18, 1944. Decided February 15, 1944.

*Mahan, Bacon & White,* for plaintiff.
*Love & Love,* for defendants.

RILEY, JUDGE: •

In this action of trespass on the case, Leo Mazzocchi, an infant eleven years of age who sues by his father and

next friend, seeks to recover damages from defendants Earl M. Seay and Gladys Seay, parents of Buddy Seay, an infant between four and five years of age who, plaintiff charges, fired an air rifle at, and struck, him "with a ball or bullet therefrom in the eye", causing plaintiff to lose the vision thereof. Defendants demurred to the declaration on the ground, among others, that the declaration does not allege any negligent conduct on defendant's part proximately causing plaintiff's injuries. The Circuit Court of Fayette County sustained the demurrer and, on its own motion, certified here the questions: (1) Are defendants, parents of an infant between the age of four and five years residing in their home and subject to their custody and control, liable for damages for injuries sustained by another infant eleven years of age, by reason of having been shot in the eye by a compressed air rifle given by defendants to their infant son, and alleged to have been permitted to be used by him with defendants' knowledge that the air rifle was "a harmful and dangerous instrumentality" in the hands of their infant son, where he was permitted to carry and use the same without direction, supervision or control by the defendant parents; and (2) under such allegations are the parents liable, regardless of the theory that parents are not under the common law liable for torts of their infant children, for their alleged negligence in making possible the damage and injury to plaintiff under the allegation that defendants knew that the weapon or air rifle causing the damage was "a harmful and dangerous instrumentality" in the hands of their infant child, then between four and five years of age.

The declaration contains two counts. In the first count, plaintiff alleges that defendants gave to their infant son "a weapon commonly known as an air rifle", which they permitted him to use indiscriminately in the neighborhood in which they lived, and because of the "infancy and tender years" of this son, it was defendants' duty "to so care for, supervise and direct" him in the possession and use of the weapon that he would not injure the per-

son or property of others. The gravamen of this count is that defendants negligently and wilfully permitted their infant son to carry, control and use the air rifle without defendants' direction, supervision and presence, with knowledge that the weapon would be used by him "without judgment, care or discretion". In the second count the complaint is that defendants negligently, carelessly and wilfully gave an air rifle to their infant son, knowing that, by reason of his infancy, he was incapable of the use of judgment, care and discretion in the use and control of an air rifle "which by means of compressed air, fired a shot with considerable force and violence sufficient to cause the damage and injury to the plaintiff", and, knowing that it was a harmful and dangerous instrument in the infant's hands, permitted him to have it in his possession and under his control in the neighborhood in which they lived, and that infant Seay so carelessly and immaturely handled the rifle that it was discharged and a shot therefrom struck plaintiff in the eye, resulting in the loss of vision therein.

While there seems to be no judicial guide in this jurisdiction on the question of liability of a parent for the torts of his minor child, other than in automobile cases *(Jones* v. *Cook,* 90 W. Va. 710, 111 S. E. 828), "it is universally held at common law that the mere fact of paternity does not make a parent liable" for such torts. 39 Am. Jur., Parent and Child, Section 55. Plaintiff does not controvert that principle but contends that liability exists in the instant action because defendants "negligently countenanced and consented to the indiscriminate use of a dangerous instrumentality, with the consequent implication of negligence and encouragement from the age and immaturity of the child over which they had control." Liability of the parent has been recognized where he has permitted "his child to have access to some instrumentality potent for mischief." Cooley on Torts, 4th Ed., Vol. 1, page 198; see also 39 Am. Jur., Parent and Child, Section 56; annotation (following *Parman* v. *Lem-*

*mon*, 119 Kan. 323, 244 P. 227), 44 A. L. R. 1509 et seq. "This liability of the parent arises from his active misconduct; he has actually created an unreasonable risk to others by placing a chattel in the hands of a person whose use thereof is likely to create a recognizable risk to third persons". Article, 43 Yale Law Journ. 886, 894. The exercise of reasonable care, but without legal responsibility for lack of parental efficacy in making a child amenable to disciplinary measures, is adopted in Restatement of the Law (Torts, Negligence) Volume 2, Section 316, wherein the rule is propounded thus:

> "A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
> (a) knows or has reason to know that he has the ability to control his child, and
> (b) knows or should know of the necessity and opportunity for exercising such control."

Counsel for plaintiff direct our attention to four cases in each of which liability was imposed upon a parent where injury had been inflicted upon a third person by an infant child in the use of an air rifle. In *Kuchlik v. Feuer*, 267 N. Y. S. 256, 191 N. E. 555, the parents knew that the child was using the rifle, and liability was sustained because the father's "negligence made it possible for the child to cause the injury complained of and probable that the child would do so." In *Gudziewski v. Stemplesky*, 263 Mass. 103, 160 N. E. 334, it was the use of an air gun with the knowledge, consent and acquiescence of the parents which created actionable negligence, while in *Archibald v. Jewell*, 70 Pa. Super. Ct. 247, cited by plaintiff, the Court refused to "say, as a matter of law, that an irresponsible boy with the full knowledge of his father, may possess and use, as an innocent toy, a device loaded with fifty BB shot, capable of being discharged with such force as to destroy the eye of a human being at a distance

of fifty or more feet"; but held the father's negligence in knowingly permitting his son to possess and use such a device to be a jury question. In the *Archibald* case, the Court distinguished an earlier case decided by the Supreme Court of Pennsylvania, in which it denied a father's liability where,

> "The negligence alleged on the latter's part was his permitting his boy, immature and inexperienced as he was, to be in possession of such a plaything (toy air gun) after warning he had received from several persons who knew no more than he himself did, that danger of accident attended such indulgence on his part."

*Fleming* v. *Kravitz,* 260 Pa. St. R. 428, 103 Atl. 831. See *Bebee* v. *Sales,* 32 Times L. R. 413, cited by plaintiff.

Defendants admit there is a legal duty on the part of parents to restrain or control the negligent conduct of their infant children, where they have knowledge thereof, or the wrongful act was committed in the presence of the parents, or with their acquiescence; but defendants assert, in substance, that the duty is a relative one and dependent upon circumstances.

The variance of human reactions toward an air rifle as an agency for harm is recorded in *Archibald* v. *Jewell,* *supra,* and *Harris* v. *Cameron,* 81 Wis. 239, 51 N. W. 437. In the former case, the likelihood of mischief to flow from use of such an instrument is expressed thus:

> "The writer of this opinion daily sees, when the schools are in session, about a thousand children arriving and departing from their places of instruction. To say, as a matter of law, that all of them, or any considerable number of them, could equip themselves, with the knowledge of their parents, with guns or toys of the character described by this evidence and use them at pleasure in their games and sports, would seem to be an inconceivable proposition. Its results for mischief and injury would probably exceed those flowing from any epidemic that could occur."

An opposite view is stated as follows in the *Harris* case:

"Many of the toys for a baby may be used for injury. In all of these cases the thing in itself, and when used in the manner and for the purposes for which it was made, and when put to its ordinary or common use, is harmless, and yet may be used exceptionally for personal injury. It is easy to convert almost any good thing into an evil by improper use. What shall we say, then, of this toy gun? It is not dangerous in itself, and was not intended to be dangerous, or to do mischief. It was designed for a mere toy or plaything for boys. It is commonly used as a toy and plaything by boys. The defendant bought it as a plaything for his boy. It is presumed that he bought it to be used in the natural and common way. He had no reason to expect that it would ever be used to shoot a boy's eye out. He is only responsible for the consequences which naturally, commonly, and reasonably follow its proper and natural use. He had no reason to expect that any boy would ever aim it at the face of another boy."

Webster defines the term "air rifle" in this manner:

"a. A rifle from which the projectile is propelled by air compressed by a plunger within the barrel. b. A toy rifle from which the projectile is propelled by a spring."

As an object and of itself, an air rifle cannot be said to be inherently dangerous. Certainly an allegation merely that parents permit an infant child to use one indiscriminately imposes no duty of supervision without further averment to indicate the probability of harm from such use. Hence, we find the first count faulty and the trial court properly sustained a demurrer thereto.

The second count characterizes the air rifle as "a harmful and dangerous instrumentality in the hands of said infant" and alleges that (1) by reason of infancy Buddy Seay was incapable of the use of judgment, care and discretion in the use and control of the gun; (2) the air

rifle "by means of compressed air fired a shot with considerable force and violence sufficient to cause the damage and injury to the plaintiff"; and (3) that defendants knew that the weapon was a "harmful and dangerous instrumentality" in their son's hands and knew he was incapable of the use of judgment, care and discretion in the use and control of the rifle.

There are, of course, in this jurisdiction cases which hold that one's conduct in the use of firearms and explosives and other agencies "potent for mischief" is care commensurate with the dangers to be avoided. *Koontz v. Whitney*, 109 W. Va. 114, 153 S. E. 797; *Merrill v. Torpedo Co.*, 79 W. Va. 669, 92 S. E. 112; *Morrison v. Power Co.*, 75 W. Va. 608, 84 S. E. 506. Likewise we think that, since liability of a parent for his infant's torts must be grounded in the parent's culpability, negligence must be construed as a relative term and duty dependent upon the circumstances. This Court has recognized that a child's age and intelligence and the nature of the danger are factors for consideration in determining a child's contributory negligence. *Prunty v. Tyler Traction Co.*, 90 W. Va. 194, 110 S. E. 570. Undoubtedly these and others, such as his experience and training, are matters to influence a careful parent in giving to a child an instrument likely to injure others, and are pertinent guides to determine whether, in a given case, a parent has acted prudently in giving an air rifle to a minor child. In the instant case, if the infant's parents were to testify that they knew that by reason of the infancy of their son the particular air rifle would be a harmful and dangerous instrument in his hands, the act of placing such an instrument, with that knowledge, into the infant's hands for indiscriminate use would convict them of lack of due care. Therefore, the averments of the second count suffice to charge a violation of legal duty.

In the instant case, an averment of the second count is that by reason of the infancy of their son, defendants knew the air rifle would be "a harmful and dangerous

instrumentality" in his hands. This count charges that the air rifle "by means of compressed air, fired a shot with considerable force and violence sufficient to cause the damage and injury to the plaintiff", and that the infant Seáy so carelessly and immaturely handled and used the weapon that it was discharged and a shot therefrom struck plaintiff. Did the parents furnish the shot for the air rifle when they gave it to their child or when they permitted him to have it in his possession and under his control? In the declaration in the *Gudziewski* case, which plaintiff states "is almost identical in its averments with" that in the instant case, there is a charge that the parent "negligently and unlawfully gave into the possession or control of their said minor children a gun and ammunition to be used therewith." If, as we have observed above, the rifle itself was not a dangerous agency, why did it become a harmful and dangerous instrument in their son's hands, and what knowledge did defendants have that it would be such?' Due allegation of a fact, without detailing minute circumstances which constitute the evidence, is good pleading, (Hogg's Pleading and Forms, 4th Ed., page 109) but upon trial of the issue of the parents' negligence it will be incumbent upon plaintiff to sustain these averments by factual data, so that defendants' liability will depend upon appraisal of evidential matter to see if they have violated the standard of conduct required of parents under these particular circumstances.

Being of opinion that the court properly sustained the demurrer to the first count, but erred in sustaining the demurrer to the second count, the ruling of the trial court is affirmed in part and reversed in part.

*Ruling affirmed in part and reversed in part.*