GEORGE J. WEISSNER, Administrator, *vs.* ST. PAUL CITY RAILWAY COMPANY.

December 9, 1891.

Street Railway—Negligence of Driver of Car.—*Held*, in this case, which is controlled by the rules of law laid down in *Anderson* v. *Minn. Street Ry. Co.*, 42 Minn. 490, that the evidence warranted the evident conclusion of the jury that defendant's driver was guilty of negligence.

Same — Fatal Injury to a Child — Negligence of Parents. — *Held, further*, that there was no testimony in the case tending to show that the parents of the infant injured by defendant's street car contributed to the driver's negligence.

Appeal by defendant from an order of the district court for Ramsey county, *Egan, J.*, presiding, refusing a new trial after verdict of $750 for plaintiff, in an action by him, as administrator, for negligence of the defendant resulting in the death of his intestate, Maidie Blees, a child of the age of 17 months at the time of her death.

*Henry J. Horn*, for appellant.

*Willis & Nelson*, for respondent.

COLLINS, J. The plaintiff's right to recover in this action depends upon the sufficiency of the evidence to sustain the allegation in his complaint that defendant corporation was negligent in its operation of one of its cars drawn by a pair of horses, the driver thereof being the only employe with the car. The accident which resulted in the death of plaintiff's intestate, Maidie Blees by name, a girl aged 17 months, occurred on Wabasha street, St. Paul, at a point nearly opposite the house in which her parents resided, about midway between College avenue and Tenth street. The car was going south upon the westerly rails of a double track, down hill, the descent being about 4½ feet to the block of 300 feet, and the horses were trotting at the rate of at least 5 miles an hour,—a rate of speed which would cause them to cover the block of 300 feet in less than two-thirds of a minute. There were several passengers on the car, but, so far as appeared on the trial, none of them witnessed the accident. One wit-

ness, Mr. Sherman, stood at the corner of Wabasha and Tenth streets, about 200 feet distant, looking directly at the approaching team, the car, and the child, as the latter ran from the sidewalk, and, according to his testimony, fell upon the westerly rail several feet in front, or south, of the horses. But his position and facilities for seeing, looking, as he did, directly towards the child, the animals, and the car, were not so good as those of other witnesses, who were nearly opposite the child when it fell, and but a few feet away. These witnesses were Mrs. Lawler and Miss Nilson, who occupied and were in the front room up-stairs of the dwelling of the girl's parents, and Mrs. Sture, who kept and was in a small shop in the building next adjoining upon the south. Their testimony was, in substance, that as they heard the car coming down the hill, but before they saw it, the child ran fron the sidewalk towards the rail, (13 feet distant in a direct line,) was knocked down by the car or by a harness trace, fell in rear of the team and just in front of the car, which struck it instantly. On this feature of the testimony, as to where and when the child fell, these witnesses were corroborated by the driver, and, as their opportunities for observation were much superior to those of a witness who was looking at the affair from the front and farther away, and as on this testimony a less favorable case was made for the plaintiff on the question of the driver's negligence, we shall assume that the version given by these witnesses of the unfortunate occurrence was correct, and that on this one point Mr. Sherman was mistaken. The street on which the car was running was not obstructed by carriages, at least one of the witnesses stated that he saw none about then. The little girl first stood, with other children, on the walk, nearly in front of her parents' house, and the driver testified that he saw them as he crossed College avenue, about 150 feet north. Immediately after making the crossing his attention was called, by means of the small mirror in his front in the "cape" of the car, to a man who stood upon the rear platform. As the driver's testimony in respect to what transpired just at this juncture seems to throw light upon the occurrence, we quote in full from the record a few questions as propounded by counsel, and the answers thereto as given by the driver. "Question. Now, do you remember what happened just as

this accident occurred? What were you doing? Answer. Well, as it occurred I was putting on my brake. Q. Just before that what were you doing? A. Just before it? Q. Yes. A. I just happened to see the little child just before it. Q. And just before that what were you doing? A. I was looking to my left; I was looking back to my hind platform. Q. What were you looking back there for? A. I noticed a man on the hind platform through the glass. Q. Through what glass? A. The glass up in front. Q. That is the little looking-glass? A. Yes, and I turned around where I could fairly see, but just as I turned back I saw the little child." She was then on the right-hand side, but one or two feet from the car, according to the driver's testimony, running towards it, and was struck by the front end of the car, he thought. Again, when accused of rapid driving and carelessness, immediately after the occurrence, the driver attributed his failure to see the child in time to prevent the infliction of injury to the fact that he was looking towards the rear of the car.

Now, from this version of the circumstances, coming from the lips of the defendant's driver, and for whose negligence it is responsible, and from his other statement, we think it very clearly appears that soon after crossing College avenue his attention was directed from his team, and from the public thoroughfare in his front, to the left and to the rear platform, so that he was unable to see the child approaching from the walk, upon his right, until it was almost under the car. While his horses were trotting at a sharp pace down hill and for some distance he was not in a position to see what was transpiring in front, or upon his right, until it was too late to avert the accident. The child, after stepping from the walk, went at least 13 feet in plain sight before it was knocked down, and the distance covered by the horses in the same period of time, during which the driver could have seen it approaching, had he looked, depends entirely upon the rapidity of the child's movements as compared with the speed of the team. It is safe to say that a pair of horses, trotting at the rate these were, would travel 4 or 5 times faster than a child aged 17 months, and therefore the car must have been from 50 to 65 feet north of the point of collision when the child left the sidewalk; and the car could have been stopped with ease in one-third of this dis-

tance. In connection with this estimate of the distance, and the non-attention of the driver to the street in front, it may be well to again allude to the fact that the three ladies who saw the little girl when she started from the walk in the direction of the rails also testified that although they heard the rumbling of the car at the same moment, and knew it was rapidly approaching, they did not see it until it suddenly came upon the child and struck it down. To be sure they were inside the houses, with their lines of vision somewhat circumscribed, and were probably more absorbed in the child than in any other object; but in a slight degree this fact demonstrates that the car was not dangerously near when it became perfectly plain to all who were looking out upon the street — and among these persons should have been the driver — that the child, unless stopped, would run upon the track directly in front of the car. What is required of the driver of a street-car in the way of care and watchfulness has been stated quite recently in *Anderson* v. *Minn. Street Ry. Co.*, 42 Minn. 490, (44 N. W. Rep. 518,) and need not be repeated here. Under the rules laid down in that case, the question of negligence on the part of the defendant was a proper one for the jury.

There is nothing in the claim that the child's parents were guilty of contributory negligence. She was not permitted to go upon the street unattended. But a few minutes before the accident she had been brought down-stairs by her mother, and seated in the dining-room with a piece of bread in her hands. That she made her escape from the house by way of an open front door, not to exceed five minutes before the car ran her down, was made evident by the testimony of several witnesses. There was no negligence on the part of her parents, unless we are to declare that it is negligence for parents with small children to leave them for a moment without first closing all outside doors.

Order affirmed.