ARLINE BLANCHE MORGAN, by Claude S. Morgan, her Father and
Next Friend,

*vs.*

AROOSTOOK VALLEY RAILROAD COMPANY.

Aroostook.   Opinion September 9, 1916.

*Negligence of parents or guardians being imputed to child who suffers
thereby.   What is ordinary or reasonable care.   What is
reasonable or ordinary care upon the part of
parents or legal custodians of children.*

1. It is the duty of the driver of an electric street railway car to keep a
   reasonable look out ahead and to exercise a vigilance in his outlook ac-
   cording to the circumstances reasonably to be expected in the section
   through which his car is passing.   To be reasonable, the care must be
   commensurate with the risks and dangers which there is reason to appre-
   hend.
2. A duty devolves upon the parents or legal custodians of a child to
   exercise reasonable care in protecting it and keeping it off the streets and
   other places of danger.   In case of failure to exercise such care, the neg-
   ligence of the parents or custodians is imputable to the child who suffers
   injury thereby.
3. The evidence warranted the jury in finding that the defendant's motor-
   man was negligent, and that the plaintiff's parents exercised reasonable
   care.

Action on the case for the alleged negligence of defendant.
Defendant pleaded general issue and brief statement, alleging that
the plaintiff was not in the exercise of due care at the time when
the injuries complained of were received.   Verdict for plaintiff in
sum of sixty-five hundred dollars.   Defendant filed motion for new
trial.   Motion overruled.

Case stated in opinion.

*Cyrus F. Small, and Powers & Guild,* for plaintiff.

*John B. Roberts, C. F. Daggett, and W. R. Pattangall,* for defend-
ant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

SAVAGE, C. J.   The plaintiff, a child less than two years old, was run over and seriously injured by an electric motor engine on the defendant's road, and brings this action to recover damages, on the ground of alleged negligence.   The verdict was for the plaintiff, and the case comes before this court on the defendant's motion for a new trial.   The only grounds of non-liability argued are that the defendant's servants operating the motor were not negligent, and that the negligence of the child's parents should be imputed to her as contributory negligence.

I.   The defendant's negligence.   The evidence shows that the accident happened on Roosevelt Avenue, in the village of Caribou, in front of the plaintiff's home.   The following sketch will help to understand the situation.

The defendant's track crosses Washburn avenue and proceeds thence northeasterly by a nine degree curve, on a fill from four to six feet high, to Roosevelt avenue, which it enters about one hundred feet westerly from its junction with Washburn avenue.   The plaintiff was in the street on the defendant's track.   The motor, hauling three or four freight cars, was proceeding easterly to the station in Caribou, at a speed of from ten to fifteen miles an hour. Upon the motor was a motorman, a trolleyman, and the head brakeman.   The evidence warranted the jury in believing that the motorman had a plain view of the spot where the accident occurred all the time after he passed Washburn avenue until he was so near

that the front of the motor obstructed the view. The point where this clear view began was about 438 feet from the point of the accident. This distance was traversed in thirty seconds, if the train was going ten miles an hour as the defendant claims, or twenty seconds, if going fifteen miles an hour as the plaintiff claims. This shortness of time might lead a jury to believe that the motorman might at any time within that period have seen the plaintiff about or upon the track, if he had been looking; that is, the time was so short that the child could not have come from any place out of view in that time. Two of the men on the motor, the trolley man and the head brakeman, saw her on the track. Each says that he noticed that the motorman was looking ahead, and therefore said nothing to him, until the danger was exceedingly imminent, when each says he "yelled" to the motorman. This aroused the motorman to a sense of the situation, and he then first saw the child. He says she was then fifty feet in front of him. It is conceded that from that time he did everything in his power to stop the train, but it was too late.

The motorman's excuse is that as he sat in the cab his view of the point of collision, the place where the child was, was obscured part of the way around the curve by the framework of the cab. There was a window in front of him, and one on his right hand out of which he could look. But he says that the framework between, that is, the corner of the cab prevented his seeing all that was in front of him at all times. This is of course true if he sat perfectly still, and moved his head neither to the right or the left. But the jury might have thought that the exercise of reasonable care under the circumstances required him to move his head so as to obtain a view of possible dangers before him, if he could not see them otherwise. At any rate, we think so. He was approaching a street, and was to cross it. The very situation made it a place of possible danger. The proximity of its junction with another street made it more so.

The defendant's brief states the law correctly when it says. "It is the duty of the driver of an electric street railway car, consistent with due care, to keep a reasonable lookout ahead and to exercise a vigilance in his outlook according to the circumstances reasonably to be expected in the section through which the car is passing."

While the driver is holden only to the exercise of reasonable care, what is reasonable care depends upon the circumstances. To be reasonable the care must be commensurate with the risks and dangers which there is reason to apprehend. The quantum of care required varies according to the situation. This doctrine is settled, and it is unnecessary to cite authorities.

It is urged that it was the duty of the motorman in approaching the crossing of a street, and especially when near a junction of streets, to be on the lookout for teams or travelers upon the streets coming from one direction or the other, and that he could not be looking in all directions at once. This is all true. But by a slight movement of his body he could have looked in all directions, not at once, but in much less time than it takes to write it. It was the work of only an instant. His motor car was so constructed as to give him a sweeping view, if he moved himself so as to take it. The jury were warranted in finding that the motorman was negligent in failing seasonably to look ahead on the line of the track, to the point where the child was. Had he done so the accident could easily have been prevented.

2. Contributory negligence of the parents. It seems to be conceded that this child, less than two years old, was not of sufficient age to exercise any care under any circumstances. And we think it should be so declared as a matter of law. This being so, the action cannot be defeated by the plaintiff's own conduct. But in such a case a duty devolves upon the parents or legal custodians of a child to exercise reasonable care in protecting it and keeping it off the streets and other places of danger. And in case of failure to exercise such care, the negligence of the parents or custodians is imputable to the child who suffers injury thereby. But parents are holden only to the exercise of reasonable care. And what is reasonable care depends upon the facts and circumstances, and sometime in part, even, upon the financial condition of the family. No exact rule can be laid down. These principles were carefully considered and declared, and the authorities collated and discussed, in *Grant* v. *Bangor Ry. & El. Co.,* 109 Maine, 133, and require no further elaboration.

The house of Mr. Morgan, the plaintiff's father, fronted on Roosevelt avenue. The yard surrounding it was enclosed by a wire fence

made to keep the plaintiff, and another child a little older, off the street. Apparently when made it was child tight. There were three gates, one opening upon the street, and they were so fastened that the children could not open them. After the accident the father discovered one place where the earth underneath the fence had fallen away so that a child by pressing out the wire netting could crawl out under. But this was not known before. Prior to the accident the plaintiff had been playing in the yard. The mother was washing in the shed at the rear of the house. A few minutes before the accident the groceryman came, and when he left the mother says she went out to see that he fastened the front gate and to see if the other gates were closed. The mother says further that not more than five minutes before the accident the plaintiff came to the shed and wanted her coat put on, and that a neighbor who was there put it on for her, and that the plaintiff then went out, and was not seen again. Two of the train crew say that the front gate was open at the time of the accident. How the plaintiff got out is not known. The defendant in argument suggests that the stories of the mother and the trainmen may all be true, and that the neighbor left the gate open as she went in. But it urges nevertheless that it was negligence on the part of the mother to permit the child to run about unattended so near a dangerous track, at a time of day when a train might be expected, without knowing that the gates and fences were so arranged that the child could not stray away.

Upon the evidence, the question whether the mother exercised reasonable care was for the jury, and we think their conclusion in the affirmative is sustainable.

One ground of the motion for a new trial is that the damages awarded were excessive. The plaintiff has lost the fingers of her left hand. The third and fourth were removed to the wrist joint, the middle finger to the knuckle joint. The motion of the wrist, what there is left of it, is impaired and restricted. The left foot was cut off at the center of the instep. She suffered three surgical operations. Under these circumstances, we cannot say that the verdict for $6500 is so large as to require the interposition of the court.

*Motion for a new trial overruled.*