## HUGH GEORGE WRIGHT v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

June 7, 1946.

No. 34,120.

[1]Reported in 23 N. W. (2d) 347.

*Erling Swenson* and *John Edmund Burke,* for appellant.
*Ralph T. Boardman* and *John F. Dulebohn,* for respondent.

PETERSON, JUSTICE.

Plaintiff, a boy about five and one-half years old, brings this action by his father as his natural guardian to recover damages for personal injuries sustained as the result of defendant's alleged negligence. Defendant had a verdict. Plaintiff appeals.

There are numerous assignments of error challenging the regularity of the proceedings below and the correctness of the charge in defining the rights and liabilities of the parties. Because we think that there must be a reversal for the reason that the charge was erroneous and because we think that the alleged irregularities are not likely to be repeated upon a new trial and that the errors in the charge might be, we shall limit consideration of the appeal to the errors in the charge, to the end that the trial court may be

guided as to the correct rules for determining the rights of the parties upon a new trial.

The accident occurred in the intersection of Fourth avenue south and Eighteenth street in Minneapolis. Fourth avenue extends north and south and has two parallel sets of streetcar tracks in the middle, one for northbound and the other for southbound traffic. Eighteenth street extends east and west. There are no traffic-control signals at the intersection. There is a marked pedestrian crossing on the south side of Eighteenth street across Fourth avenue shown by parallel yellow lines painted on the pavement. These lines are prolongations of the sidewalk lines.

Plaintiff, at the time of the accident, was about 40 inches tall. He lived in an apartment at the southwest corner of the intersection. At about ten minutes past eight o'clock in the morning he left his home to go to school, went to the southwest corner of the intersection, where he stopped, and, after making observations to his left and to his right, started to run across the street within the marked crosswalk. When plaintiff started to cross the street, one of defendant's northbound streetcars was standing upon the crosswalk on the south side of the intersection discharging and taking on passengers. The testimony of an eyewitness and of the motorman, illustrated by a photograph and a map of the *locus in quo,* showed that the front part of the streetcar was upon the crosswalk and the fender projected about three feet over the north line thereof into the intersection. According to the testimony of the only eyewitness, plaintiff touched the side of the streetcar with his hand, went along the left side, and started to cross in front of it; and, when plaintiff was going around in front of the streetcar, it started suddenly without giving any warning and struck him, causing him to fall on the fender, which projected about three and one-half or four feet in front of the streetcar. He was carried on the fender for a distance of about 140 to 150 feet and then fell off on the east side with his head toward the curb and his feet toward the tracks. The streetcar passed over the toes on his left foot, necessitating their amputation.

Plaintiff claimed that when he was going around the front of the streetcar the motorman started it suddenly without first making an observation to ascertain whether the tracks were clear and without sounding any warning that the car was to be started. There was testimony to substantiate plaintiff's version as to his crossing, the failure of the motorman to make any observation either ahead or to his left before starting the car, the sudden starting of the car when plaintiff was going around in front of it, and the lack of any warning that the car was to be started. Defendant sought to justify the motorman's conduct by a claim of right of way to which plaintiff was required to yield and by showing that the motorman under the circumstances could not and did not see plaintiff before starting the car. In support of its version, the motorman testified that prior to starting the car he had been collecting fares and looking to his right and that at the time he started he looked to his right, to his left, and ahead. He testified further that he was five feet six inches tall; that he remained seated while performing his duties; and that by looking out the left window of the car he could not see a person of plaintiff's height if such person was within ten feet of the side of the car; that he did not see plaintiff before he started the car; and that he did not know that plaintiff was crossing the street or that he had been struck by the car or that he had been carried on the fender until after plaintiff had fallen off the fender and the car had passed over plaintiff's foot. Another motorman testified that while seated a motorman could not see the front bar of the fender.

The portions of the charge challenged by plaintiff are as follows:

'(1) "* * * Between intersections streetcars and motor vehicles have the right of way, which means that in this case, for instance, if the streetcar had entered the intersection and had crossed the southerly crosswalk of that intersection before this boy stepped from the curb into the street, then the streetcar would have had the right of way. But if the boy [plaintiff] had stepped from the curb onto the crosswalk with the intention of proceeding in an

easterly direction on the southerly crosswalk, before the streetcar had entered the intersection, then the boy would have had the right of way."

(2) "* * * On the other hand, if the circumstances are such that in the exercise of ordinary care he does not see such pedestrian, why then his failure to give such warning would not constitute an act of negligence. * * * If this boy left the curb and the motorman couldn't see him, due to the height of the boy, in the exercise of ordinary care, that is, if the motorman had looked and couldn't see the boy, then his failure to see him would not constitute negligence."

(3) "* * * The motorman is supposed to do, under all the circumstances, just what a reasonably prudent motorman would do. * * *

"* * * So one of the first issues that you ladies and gentlemen will have to decide when you return to your jury room, is whether or not that motorman in operating that streetcar at that time and place exercised ordinary care, exercised such care as a reasonably prudent motorman would have exercised under the conditions and circumstances as they then existed. If he exercised that degree of care then the defendant is not liable."

(4) "* * * Accidents may happen when no one is to blame, they may be the result of an unavoidable accident, or they may result when the person who brings the action is to blame. Before you can return a verdict in this case against this defendant you must find by a fair preponderance of the evidence that the injuries which the boy sustained were caused solely and directly by the negligence of the motorman of that streetcar."

■ "Right of way" is "the privilege of the immediate use of highway." Minn. St. 1941, § 169.01, subd. 45 (Mason St. 1940 Supp. § 2720-151[44]). Where, as here, there are no traffic-control signals, the driver of a vehicle is required to "yield the right of way, *slowing down or stopping if need be to so yield,* to a pedestrian crossing the roadway within any marked crosswalk or within any

unmarked crosswalk." (Italics supplied.) Section 169.21, subd. 2 (§ 2720-203[a]). Right-of-way rules apply to streetcars. LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522. The object of giving a pedestrian the right of way and requiring vehicles to slow down or stop to accord him such right is to protect pedestrians, especially the aged and children, from being in effect trapped by moving traffic and hit by inconsiderate and impatient drivers who insist on proceeding, heedless of danger and injury to those on the highway who are unable to protect themselves under the circumstances. See, Goodman v. Brown, 164 Misc. 145, 298 N. Y. S. 574.

The right-of-way rule is simply a rule of precedence as to which of two users of intersecting highways shall have the immediate right of crossing first at an intersection where the users simultaneously approach the intersection on the intersecting streets so nearly at the same time and at such rates of speed that, if they proceed without regard to each other, a collision or interference between them is reasonably to be apprehended. The application of the rule is restricted to such situations. Casto v. Hansen, 123 Or. 20, 261 P. 428; 3 Berry, Automobiles (7 ed.), § 3.13, p. 39. The privilege conferred by right of way is that of an *immediate crossing* by a *moving* pedestrian or vehicle without interruption by another, and *not of a future crossing* by a *standing* one after first starting and moving. A vehicle or pedestrian standing still on a highway can have no right of way over other vehicles or pedestrians, whatever their rights otherwise might be. Guillory v. United Gas Public Service Co. (La. App.) 148 So. 274 (moving automobile and stationary pedestrian); DeSena v. American Reduction Co. 88 Pa. Super. 199 (moving and standing automobiles); Blackwood v. Monongahela Valley Traction Co. 96 W. Va. 1, 122 S. E. 359 (streetcar standing at crossing starting suddenly held not to have right of way over motorist crossing intersection in front of it); 2 Blashfield, Cyc. Auto. Law & Practice (Perm. ed.) §§ 992 (note 10), 1272 (note 5).

This is true for the obvious reason that a standing object, because of the fact that it is standing, cannot approach a given point simultaneously with a moving one. Whatever danger there might be of a collision between a standing object and a moving one, a collision between them cannot be attributed to the fact that both simultaneously approached a given point and one refused to yield to the other the privilege of crossing first. Consequently, because the streetcar here was standing, it had no right of way at the crossing over plaintiff, regardless of what its rights there otherwise might be.

Likewise and for the same reasons, plaintiff could not acquire any right of way in the crossing over the streetcar. Where an intersection is occupied by a vehicle, no right of way can be acquired against it, for the reason that the standing vehicle's occupation of the roadway, however wrongful, is an accomplished fact eliminating all considerations which otherwise might give rise to a question of right of way. DeSena v. American Reduction Co. *supra*. The instruction first mentioned had no application to the facts here. Insofar as the instruction informed the jury that plaintiff would have had the right of way if he had entered the intersection before the streetcar did, the instruction laid down a correct abstract rule of law. It had no application, however, to the facts of the instant case, because it is undisputed that the streetcar entered the intersection first and was standing across the crosswalk at the time plaintiff left the curb. Plaintiff was not entitled to the instruction; but it could not have been of any help to him, because under the undisputed facts he had no right of way anyway. Insofar as the instruction was to the effect that the streetcar had the right of way if it entered the intersection before plaintiff did, the instruction would have been correct if the streetcar had been moving. But it was positively erroneous, because the streetcar was standing still. Whatever right of way the streetcar otherwise would have had if it had not stopped at the crossing became inoperative by the stop. Leader v. Straver, 278 Mich. 234, 270 N. W. 280; Otey v. Blessing, 170 Va. 542, 197 S. E. 409; Blackwood v. Monon-

gahela Valley Traction Co. *supra*. This part of the instruction was prejudicial to plaintiff for the reason that, in view of the undisputed facts, it was equivalent to a direction that the streetcar had the right of way; and that, since it had the right of way, the mere fact that plaintiff attempted to cross in front of the streetcar constituted contributory negligence. Lindahl v. Morse, 148 Minn. 167, 181 N. W. 323. As a practical proposition, the jury must have so understood the instruction. Without such an instruction, the rights of the parties would have been determined by the ordinary rules of negligence without regard to any claimed right of way. It is not contributory negligence to cross a street in front of a standing streetcar, and no inference of contributory negligence is permissible from that fact alone. Kennedy v. St. Paul City Ry. Co. 59 Minn. 45, 60 N. W. 810. Hence, the instruction gave defendant the benefit of a rule to which it was not entitled. The instruction may have been the very thing that caused the jury to return a verdict for defendant. The case should have been submitted under the rules of negligence without reference to any claims of right of way.

█ The second portion of the charge challenged here in effect instructed the jury that if the motorman's failure to see plaintiff was due to plaintiff's height the motorman was not negligent. The correctness of the charge is to be determined in the light of the motorman's duty under the circumstances.

The duty of a motorman in operating and managing a streetcar is to exercise ordinary or reasonable care to avoid harm to others. Ordinary or reasonable care is care commensurate with the circumstances. A motorman must keep a reasonable lookout ahead so as to be able to take proper precautions to avoid accidents. Before starting his streetcar, a motorman must look to see that the track immediately ahead is clear. A motorman starting his streetcar from standstill has no right to assume that the track ahead is clear. 60 C. J., Street Railroads, § 287, p. 382, note 20. He is bound to ascertain that the track is clear. If anyone is crossing in front of the streetcar, he must wait long enough to avoid a collision. The duty to exercise reasonable care for the protection of the public

is superior to the motorman's duty to the company. Anderson v. Minneapolis St. Ry. Co. 42 Minn. 490, 44 N. W. 518, 18 A. S. R. 525; Kennedy v. St. Paul City Ry. Co. 59 Minn. 45, 60 N. W. 810; 6 Dunnell, Dig. & Supp. §§ 9015, 9016, 9021. A motorman is bound to maintain a lookout for people where he ought to know they are likely to be. This is especially true at street crossings. Hughes v. Minneapolis St. Ry. Co. 146 Minn. 268, 178 N. W. 605; Pickell v. St. Paul City Ry. Co. 120 Minn. 340, 139 N. W. 616; Gray v. St. Paul City Ry. Co. 87 Minn. 280, 91 N. W. 1106.

Where the motorman is so circumstanced, either by the structure of the streetcar or by the location where it is stopped, that he cannot see whether the track ahead is clear and whether it is safe to proceed with the streetcar, ordinary or reasonable care requires that he make such an observation as will enable him to ascertain whether it is safe to proceed or that he give an adequate and timely warning of his intention so to do in order that those who might be endangered by the movement may escape or avoid the danger incident thereto. Schuman v. Minneapolis St. Ry. Co. 209 Minn. 334, 296 N. W. 174; Chicago City Ry. Co. v. Strong, 129 Ill. App. 511 (affirmed, 230 Ill. 58, 82 N. E. 335); Morgan v. Aroostook Valley R. Co. 115 Me. 171, 98 A. 628; Prunty v. Tyler Traction Co. 90 W. Va. 194, 110 S. E. 570; United States v. Barias, 23 Philippine 434. This is especially true where the streetcar is standing at an unusual place and where starting it involves danger to persons on the street. Chicago City Ry. Co. v. Strong, *supra.*

In the Strong case, the motorman of a streetcar attached to two cinder cars ahead, which were standing still on a switching track at an intersection when a small boy on his way home attempted to cross in front of the forward cinder car, was held guilty of negligence for starting the streetcar suddenly and without warning and killing the boy by running over him, where because of the location of the streetcar and the cinder cars the motorman was unable to see whether the track ahead was clear when he started the streetcar. The court said (129 Ill. App. 515, 516):

"* * * At this dangerous place, taking into consideration the stopping of the train at an unusual place, it was negligence to again start the train without giving a premonitory warning so that pedestrians intending to cross the tracks might stop, or, being on the track in the act of crossing, might have an opportunity to avoid the danger of accident. It was negligence in not having a 'lookout' on the north cinder car.

"The rule as to what constitutes negligence is defined in P. F. W. & C. Ry. Co. v. Callaghan, 157 Ill. 406 [41 N. E. 909], as being 'the omission to do something which a reasonable man, guided by those ordinary considerations which ordinarily regulate human affairs, would do, or the doing of something which a prudent and reasonable man would not do.' This rule as applied to this case demanded that before again starting the train sufficient warning should have been given so that persons intending to cross the tracks in front of the train might desist, and those persons who were lured upon the track in an attempt to cross while the train was at a standstill, might have the chance either to pass over or retrace their steps before being overtaken by the train; that the train should not have been again started until those in charge of it had used reasonable diligence to ascertain that the track was clear of pedestrians, and that there was no apparent danger of running into any one, before starting the train."

In the Prunty case, 90 W. Va. 194, 110 S. E. 570, a motorman was held to be negligent for not seeing a child ahead on the track where a streetcar was used to push other cars.

In Morgan v. Aroostook Valley R. Co. *supra,* holding a motorman negligent for failure to move his head forward so as to obtain a view of possible dangers ahead of him, the court said (115 Me. 174, 98 A. 629):

"* * * But by a slight movement of his body he could have looked in all directions, not at once, but in much less time than it takes to write it. It was the work of only an instant. His motor car was so constructed as to give him a sweeping view, if he moved

himself so as to take it. The jury were warranted in finding that the motorman was negligent in failing seasonably to look ahead on the line of the track, to the point where the child was. Had he done so the accident could easily have been prevented."

In United States v. Barias, 23 Philippine 434, the court sustained the conviction of a motorman for manslaughter for killing a child under circumstances similar to those shown here because of his failure to look forward where he could have seen the child.

Where the motorman's inability to observe whether the track is clear and whether it is safe to proceed results from his own voluntary acts, he is no more relieved from taking the precautions necessary to insure a safe movement of a streetcar than is the driver of any other vehicle. After all, as we said in Anderson v. Minneapolis St. Ry. Co. 42 Minn. 490, 44 N. W. 518, *supra*, a motorman's first duty, so far as it concerns operating and managing his streetcar safely, is to the public. A motorman is guilty of negligence if he proceeds blindly. Chicago City Ry. Co. v. Strong, 129 Ill. App. 511 (affirmed, 230 Ill. 58, 82 N. E. 335) ; Morgan v. Aroostook Valley R. Co. 115 Me. 171, 98 A. 628; Prunty v. Tyler Traction Co. 90 W. Va. 194, 110 S. E. 570; United States v. Barias, 23 Philippine 434, all *supra*. While there are obvious differences between a streetcar and an automobile, the rule with respect to driving blindly should be the same regardless of the kind of vehicle. As we said in Rintala v. D. W. & P. Ry. Co. 159 Minn. 499, 503, 199 N. W. 562, 564, of a motorist crossing railroad tracks who, because he was enclosed in the cab of his truck, could neither see nor hear an approaching train:

"The driver cannot shut himself in the cab of his truck, where the use of his senses of sight and hearing are much hindered by obstacles of his own imposition, and then blindly attempt to cross a railway without first using his eyes or his ears free from the hindrances he himself has imposed on their use, and, by whatever standard his conduct is judged, be considered in the exercise of

due care. Certainly, that is a question as to which informed and rational minds, functioning judicially, will not differ."

Here, the vice of the charge is that the rules stated not only did not apply to the facts of this case, but that it failed adequately to state the rules that should have been applied thereto. In the first place, the charge entirely failed to consider that the evidence, illustrated by plat and photographs, showed that the motorman could and should have seen plaintiff when he was going around the front left-hand side of the streetcar. Whatever excuse the motorman may have had for not seeing plaintiff sooner, it did not excuse him for his failure to see plaintiff when he was about to go around the front left side of the streetcar. The motorman's forward observation, if actually made, was entirely inadequate in view of that circumstance. Children, the same as adults, are entitled to the protection of safety regulations. The law does not sanction running them down and killing or maiming them merely because of the fact that they are small. Weissner v. St. Paul City Ry. Co. 47 Minn. 468, 50 N. W. 606; Strutzel v. St. Paul City Ry. Co. 47 Minn. 543, 50 N. W. 690; 6 Dunnell, Dig. & Supp. § 9021. Furthermore, the motorman's duty was not only to see, but to exercise reasonable care to see, pedestrians, including small children, under the circumstances.

By stopping the streetcar upon the crossing so that it projected into the intersection, the motorman created a situation fraught with danger to pedestrians using the crosswalk, and especially to children. To begin with, the motorman had no right to stop the streetcar at that place. Crosswalks are intended for the use of pedestrians. It is not intended that streetcars and other vehicles should obstruct them. To afford pedestrians safe passage, vehicles are required to stop *at,* and *not upon,* crosswalks. Minn. St. 1941, § 169.21, subd. 2 (Mason St. 1940 Supp. § 2720-203). Stopping on a crosswalk is prohibited. Section 169.34(5), (§ 2720-219[a]5). The motorman's wrongfully stopping on the crosswalk gave him no right to prevent the use thereof by pedestrians; he was simply in-

terfering with the free and unrestricted use of the crosswalk by pedestrians. Under the circumstances, a pedestrian would have had the right to remove the streetcar, if physically able to do so, or to pass over it. In Shea v. Sixth Avenue R. Co. 62 N. Y. 180, 183, 5 Daly (N. Y.) 221, where it was held, independent of statute, that a traveler has a right to pass over the platform of a streetcar blocking a crosswalk in order to avoid the obstruction, the court said:

"The averments in the complaint show that the defendant's car blocked up the street, so as to prevent the crossing of the same by foot passengers who might have occasion to pass over. The right of every individual to a free and unrestricted use of a public highway or a street, for the purpose of passing and repassing is well settled. *When such a right is obstructed or infringed upon, I think that it is equally clear that a person who desires to pass across the street would have the right either to remove the obstruction, or if necessary to pass over the same.*" (Italics supplied.)

In accord, 2 Nellis, Street Railways (2 ed.) § 388. Of course, plaintiff, a mere boy about five and one-half years old, could neither remove the streetcar nor pass over it. His only alternative was to pass around it. This he attempted to do.

The dangerous condition to pedestrians crossing the street on the crosswalk created by stopping the streetcar upon the crosswalk so as to cause it to project into the intersection was the result of the motorman's choice of stopping at a place where it would be unsafe rather than at one, then available to him, where it would have been safe. The testimony showed that if the motorman had stopped at the south line of the crosswalk so as to leave it clear he would have been able to observe the crosswalk and would have seen plaintiff. That is where he should have stopped. Instead, realizing the structure of the car and his inability to see a person of plaintiff's size within ten feet of the left side of it, the motorman nevertheless stopped where he did. By making such a stop, he disabled himself from seeing a person of plaintiff's height within

ten feet of the left side of the car. Because the motorman knew that he was blocking the crosswalk, he should have anticipated that pedestrians crossing the street might pass along the side of the streetcar and in front of it to get across. Under those circumstances, he should have made such observation as was necessary to ascertain whether any pedestrians were passing or were about to pass in front of the streetcar and taken such precautions as were necessary to avoid injuring them. He should have kept the car standing still to avoid injuring those upon the track. Kennedy v. St. Paul City Ry. Co. 59 Minn. 45, 60 N. W. 810. As to those not upon the track but about to cross, he should have given a warning of his intention to start the streetcar. Chicago City Ry. Co. v. Strong, 129 Ill. App. 511 (affirmed, 230 Ill. 58, 82 N. E. 335). Under the circumstances, the motorman was not excused from seeing plaintiff, first, because he should have seen plaintiff when he was passing in front of the left side of the streetcar; and, second, if he could not see plaintiff when he was to his left, the motorman should have made such an observation as would have disclosed to him whether the track was clear before starting or have sounded a warning of his intention to start. If he had stopped where he should have, he could have made such an observation. Because stopping where he had no right to do so disabled the motorman under the circumstances from making a proper observation to his left while operating the car in a sitting position, it became incumbent on him to take such measures as would enable him to observe that it was safe to start before proceeding forward with the streetcar, or to give a timely and adequate warning that he intended to do so. But in no event would inability to see plaintiff while within ten feet of the left side of the streetcar excuse the motorman for failing to see him when he was about to pass around the front left side of the streetcar.

We think that the instruction adopting as the standard of care required of the motorman that of "a reasonably prudent motorman" was erroneous. The standard of care in negligence cases is what an ordinarily prudent person would have done under the cir-

cumstances. In this connection, there is no difference between a "reasonably" and an "ordinarily" prudent motorman. The words "reasonably prudent man" and "ordinarily prudent man" are used interchangeably. 30 Wd. & Phr. (Perm. ed.) pp. 156-157; 36 *Id.* p. 415. The test is not what ordinarily (or reasonably) prudent motormen might do, because they might all be negligent. Parker v. Cushman (8 Cir.) 195 F. 715; Bimberg v. N. P. Ry. Co. 217 Minn. 187, 14 N. W. (2d) 410; Empey v. Lovell, 117 Minn. 520, 134 N. W. 289; 4 Dunnell, Dig. & Supp. § 7049, and cases there cited. Furthermore, there was no evidence here to show what care reasonably prudent motormen exercised; and, because of that fact, there was no factual basis for the instruction.

■ It was also erroneous to bring into the case the question of "unavoidable accident." Neither the pleadings nor the proofs raised an issue of unavoidable or inevitable accident. Plaintiff claimed that his injuries were caused by defendant's negligence. Defendant denied that it was guilty of negligence and claimed that plaintiff was guilty of contributory negligence. The issue was whether plaintiff's injuries were caused by defendant's negligence or by plaintiff's contributory negligence. No issue of unavoidable or inevitable accident was raised. Where the only issues are whether plaintiff's injuries were caused by defendant's negligence or plaintiff's contributory negligence and there are none concerning unavoidable or inevitable accident, the charge should be limited to the issues of negligence and contributory negligence as the only ones for decision and should not refer to unavoidable or inevitable accident as a possible cause thereof. City of Fairbury v. Barnes, 228 Ill. App. 389; Bethurkas v. C. M. & St. P. Ry. Co. (Mo. App.) 249 S. W. 438; 45 C. J., Negligence, § 939, p. 1362. While it is not apparent that any prejudice resulted to plaintiff from the charge, it should not have been given. It served no purpose except that of muddying the water. It should be avoided on a new trial.

Reversed and new trial granted.