## STATE v. MARY ELLEN SCHWEIGER.

150 N. W. (2d) 210.

April 14, 1967—No. 40,327.

*Scholle, Schweiger & Kalina* and *Gerard D. Hegstrom,* for appellant.

*Joseph P. Summers,* Corporation Counsel, and *Thomas M. Mooney,* Assistant Corporation Counsel, for respondent.

Rogosheske, Justice.

Defendant was convicted by the municipal court of St. Paul of failing to yield the right-of-way in violation of Minn. St. 169.201.[1] At

---

[5] See, State v. Herdina, 25 Minn. 161; State v. Corrivau, 93 Minn. 38, 100 N. W. 638; 6 C. J. S., Assault and Battery, §116(b).

[1] Minn. St. 169.201 provides: "The driver of a vehicle approaching a YIELD

the close of the testimony, the court found the defendant guilty in the following words:

"* * * [T]he court understands * * * that your position is that if a vehicle has entered onto a street protected by the yield right of way sign, and has come to rest and be at rest for some time, the statute cannot be violated. I don't read the statute that way. I read it that you have to yield the right of way to any vehicle which is so close as to constitute an immediate hazard, and that includes continuing operation of vehicles there that constitute an immediate hazard. *So that a vehicle that is at rest could be in violation of this statute even though the vehicle that was not yielded to was a great distance away at the time the vehicle entered the intersection.* I realize that your construction of this statute is otherwise." (Italics supplied.)

The incident giving rise to the charge occurred on September 27, 1965, at approximately 5:45 p. m., when an accident occurred at the intersection of Robert Street with University Avenue in St. Paul between the automobile driven by defendant and one driven by Gerald J. Peterson, the complaining witness. Robert Street (a north-south street) ends at University Avenue (an east-west street), forming what might be described as a slanted T-intersection as northbound traffic on Robert Street, intending to turn left and proceed west on University, must enter the intersection in a northwesterly direction. Such traffic from Robert Street moves uphill and, by an appropriate sign, is required to yield the right-of-way to downhill easterly and uphill westerly traffic on University Avenue. Defendant was driving uphill on Robert Street, intending to turn left on University. Peterson was driving downhill on University Avenue toward the intersection, intending to continue east on University. It was raining, hazy, and rather dark, and the streets were wet. Both cars had their lights on.

---

sign shall slow to a speed that is reasonable for conditions of traffic and visibility, and stop if necessary, and yield the right of way * * * to all vehicles on the intersecting street or highway which are so close as to constitute an immediate hazard."

Minn. St. 169.01, subd. 45, provides: " 'Right of way' means the privilege of the immediate use of highway."

Defendant testified that traffic was quite heavy and she came to a complete stop before entering the intersection and waited while about five vehicles passed her on University. She then moved slightly into the intersection and waited for a "couple" more vehicles to cross in front of her, when the right front side of Peterson's vehicle struck the extreme right front of her vehicle. The impact occurred after she had remained stationary for about "half a minute." She did not see Peterson's car until it was about "a car length and a half" away from her.[2]

Peterson testified that he had been driving east on University at about 25 miles per hour. As he approached the intersection going downhill, there were no other vehicles near him proceeding east on University. He first saw defendant's vehicle as it was approaching the intersection but did not pay much attention to it as he thought it would stop. He next noticed defendant's car when he was about 75 feet from it. He did not know when defendant moved her car into the intersection or whether she was moving or stopped at the time of the impact.

Defendant's sole claim is that the municipal court based her conviction upon an erroneous interpretation of § 169.201. She argues that she was found guilty even though she had entered the intersection and was stopped before the Peterson vehicle constituted an immediate hazard.

While we dislike taking a critical view of a busy court's extemporaneous remarks, the statement quoted above is ambiguous, and we must agree that it is fairly susceptible of defendant's interpretation. Whether a driver approaching a yield sign must yield the right-of-way to a vehicle on the intersecting street must be determined solely as of the time he enters the intersection. Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178.[3] Therefore, if defendant entered and remained in the intersection at a time when the Peterson

---

[2] The investigating police officer testified that after the collision defendant told him that she had stopped for the yield sign; had attempted to go through the intersection but couldn't get any traction; had stopped again; and then, subsequent to this, Peterson's car struck hers. He also stated that defendant's vehicle was about 3 feet inside the intersection at the time of the collision.

vehicle was not so close as to constitute an immediate hazard, she could not be held in violation of the yield statute, although her stopping may violate other traffic statutes. Even though a violation of the statute may occur either by entering or stopping partly within the intersection when an approaching vehicle constitutes an immediate hazard, the evidence does not indicate conclusively that the Peterson vehicle was an immediate hazard when defendant entered. In view of the unique character of this intersection, and the substantial possibility that defendant's conviction resulted from an erroneous interpretation and, perhaps, rather technical application of § 169.201, we are compelled to resolve any doubts in favor of defendant by reversing and granting a new trial.

Reversed and new trial granted.

---

[3] See, also, Wright v. Minneapolis St. Ry. Co. 222 Minn. 105, 23 N. W. (2d) 347.