**Marie B. AUSTIN and Michael Austin, Appellants,**

v.

**Dennis KRUSE, doing business as Kruse Wrecker Service, Respondent.**

**No. WD 47768.**

Missouri Court of Appeals,
Western District.

Feb. 22, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

Fred Wilkins, Stephen B. Millin, Jr., Kansas City, for appellants.

Steven W. White, Rebecca L. Nissen, Independence, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

A tow truck blocked one lane of Interstate 70 in Lafayette County as its driver worked during the predawn hours of April 25, 1990, to free a truck stuck in the median. A tractor-trailer unit driven by Charles Austin slammed into the tow truck. An explosion erupted, and Austin was killed. His wife, Marie, and son, Michael, sued the tow truck's owner, Dennis Kruse, for wrongful death. The jury found Austin to be 80 percent at fault and Kruse 20 percent at fault. Marie and Michael Austin appeal. We reverse the trial court's judgment and remand for a new trial.

The mishap occurred about one mile east of I–70's intersection with Route H. A tractor-trailer unit was stuck in mud in the highway's median separating two lanes of roadway for eastbound traffic from two lanes for westbound traffic. Dennis Kruse and his employee, Perry O'Hare, each drove one of Kruse's tow trucks to the scene. As they worked to free the trapped truck, their tow trucks blocked all of the highway's westbound passing lane. Kruse and O'Hare placed flares 45 to 150 feet east of the site in the passing lane, and they turned on the tow trucks red, rotating emergency lights.[1] The trapped truck had all of its lights on so that it was "lit up like a Christmas tree." Kruse's tow truck was parked to the east of the tractor-trailer rig; O'Hare's truck was to the west. Kruse and O'Hare worked without the assistance of any law enforcement officers.[2] Before the accident, they pulled the trapped truck up onto the highway so that its tractor, too, blocked the passing lane. O'Hare drove his tow truck to the west, parking in the passing lane, to give the tractor-trailer more room.

At about 5:15 A.M., Austin's truck approached from the east. The highway was clear of obstructions for a mile to the east of the trucks. Austin's truck sideswiped

Kruse's tow truck but kept going. It barely missed hitting the tractor-trailer rig and plowed into O'Hare's tow truck, knocking it into the eastbound passing lane. O'Hare was inside the truck but survived the crash. Austin's truck flipped over, and the cab broke apart. A fierce explosion erupted. Investigating officers did not find any evidence that Austin took any evasive actions to avoid crashing into the tow truck.

■ The Austin's primary contention on appeal is that the trial court erred by hypothesizing in its instructions to the jury that Austin failed to yield the right-of-way to an emergency vehicle. The Austins rationalize that Austin could not, by definition, fail to yield the right-of-way to a parked tow truck. We agree.

The Austins complain about three instructions given by the trial court, numbered 7, 9 and 10. Instruction No. 7, modeled after Missouri Approved Jury Instructions (MAI) 17.02, 17.05, 17.08 and 37.02, raised the alternative affirmative defenses that "Charles Austin failed to keep a careful lookout, or Charles Austin failed to yield the right-of-way to an emergency vehicle[.]" Instruction No. 9, not modeled after MAI, defined "emergency vehicle" as "a wrecker while performing emergency service with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of 500 feet." Instruction No. 10, also not in MAI, defined "yield the right-of-way" as meaning "the driver approaching an emergency vehicle performing emergency services is required to yield to the emergency vehicle and take evasive action when it becomes apparent there is danger of a collision."[3]

We find no factual basis for Instruction No. 7's hypothesis for Austin's failing to yield the right-of-way. The trucks were not moving; they were "parked" in the sense that

1. The Austins dispute this, but we rely on the evidence most favorable to the jury's verdict.

2. The thrust of the Austin's lawsuit was that Kruse was negligent in blocking the highway without the assistance of a Highway Patrol trooper or other law enforcement officer to direct traffic, especially before daybreak. They also

alleged that Kruse used inadequate lighting and warning.

3. Chapter 14 of MAI has eight definitions of "yield the right-of-way," but none of them involve emergency vehicles. All of them assume that the failure to yield occurred at an intersection.

they were not involved in traffic at the time. They were not standing momentarily waiting to resume their journey. They were stationary, standing still, purposefully parked there for a specific, non-moving function for more than just a moment. As a matter of definition, a motorist cannot fail to yield the right-of-way to a parked vehicle.

The phrase "yield the right-of-way" is commonly understood to concern movement of motor vehicles. MAI defines it as meaning the right of one vehicle to proceed ahead of the other. MAI 14.02–14.09. One commentator has defined it generally "as the right of a vehicle to proceed uninterruptedly in a lawful manner in the direction in which it is moving in preference to another vehicle approaching from a different direction into its path." 60A C.J.S. Motor Vehicles § 362(1) (1969). Another commentator has instructed:

> Right of way rules simply provide a ready means of determining precedence as between two vehicles whose paths will cross[.] *If no question of precedence is presented, no question of right of way arises.* Questions of precedence arise only when there is danger of interference or collision between two objects unless one or the other gives way.

EDWARD C. FISHER, RIGHT OF WAY IN TRAFFIC LAW ENFORCEMENT, 14 (1956) (emphasis in original). The dictionary definition of "right-of-way" is "a precedence in passing accorded to one vehicle over another by custom, decision, or statute[.]" WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1016 (1989). A legal dictionary defines the term as referring "to a preference of one of two vehicles ... asserting right of passage at the same place and time[.]" BLACK'S LAW DICTIONARY 1326 (6th ed. 1990).

These definitions concern movement—one vehicles right to move in preference to another vehicle. Common sense dictates that "right-of-way" does not involve a parked vehicle.

Kruse contends for a much broader interpretation of the phrase. He argues:

> [R]ight-of-way confers on a vehicle or person, the right to be in a specific location in traffic which otherwise may be rightfully occupied by another vehicle. Therefore,

the duty of a vehicle to yield the right-of-way to an emergency vehicle means to yield to an emergency vehicle that portion of the roadway which would otherwise be open to travel.

Though not void of logic, the contention is without merit as contrary to law.

In *Broome v. Bi–State Development Agency,* 795 S.W.2d 514 (Mo.App.1990), the court addressed the proper definition of "right-of-way" in a case involving a bus hitting a pedestrian. The court concluded that the trial court's definition was "overly broad" because it instructed that " 'yield the right of way' ... means a driver of a motor vehicle is required to yield to a Pedestrian about to enter or entering a roadway facing a 'walk' signal." The court concluded, "Obviously, if the pedestrian is only 'about to enter,' the pedestrian is not proceeding across the roadway. In such a situation, yielding the right-of-way does not come into play." *Id.* at 520.

This was the same conclusion reached by the Supreme Court of Minnesota in *Wright v. Minneapolis Street Railway Company,* 222 Minn. 105, 23 N.W.2d 347, 352–43 (1946) (emphasis in the original):

> The privilege conferred by right of way is that of an *immediate crossing* by a *moving* pedestrian or vehicle without interruption by another, and *not of a future crossing* by a *standing* one after first starting and moving. A vehicle or pedestrian standing still on a highway can have no right of way over other vehicles or pedestrians, whatever their rights otherwise might be....
>
> This is true for the obvious reason that a standing object, because of the fact that it is standing, cannot approach a given point simultaneously with a moving one. Whatever danger there might be of a collision between a standing object and a moving one, a collision between them cannot be attributed to the fact that both simultaneously approach a given point and one refused to yield to the other the privilege of crossing first.

*Id.,* 23 N.W.2d at 352–53. The Wright court cited *Guillory v. United Gas Public Service Company,* 148 So. 274 (La.App.1933); *DeSena v. American Reduction Company,* 88 Pa.Super.Ct. 199 (1926); and *Blackwood v. Monongahela Valley Traction Company,* 96 W.Va. 1, 122 S.E. 359 (1924).

Not only is Kruse's position contrary to case law, it is contrary to the statute upon which Kruse relies. Section 304.022, RSMo Cum.Supp.1993, mandating a motorist's duty to yield to an emergency vehicle, speaks only of *moving* emergency vehicles. Section 304.-022.1 says, "Upon the immediate *approach* of an emergency vehicle . . ., the driver of every other vehicle shall yield the right-of-way[.]" Section 304.022.4(3) says, "The exemptions herein granted to an emergency vehicle shall apply only when the driver of any such vehicle while *in motion* sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary[.]"[4]

Moreover, were we to adopt Kruse's contention, we would, in effect, meld the definitions of yielding the right-of-way with keeping a careful lookout and with a motorist's duty to take action to avoid a collision as stopping, swerving, slowing down and sounding a warning (as set out in MAI 17.04). Yielding the right-of-way has a distinct meaning. *See Robinson v. Gerber,* 454 S.W.2d 933 (Mo.App.1970). We would abuse the law to adopt Kruse's interpretation.

Kruse cites as support for his interpretation the decision of this court's Eastern District in *Krenski v. Aubuchon,* 841 S.W.2d 721 (1992). The facts of that case, however, distinguish it from the case before us. *Krenski* involved a car which momentarily stalled in an intersection before being hit by an oncoming car. The plaintiff had made an abrupt "U-turn" causing her car to stall as it rolled into the intersection. Ten seconds later an oncoming car swerved to avoid hitting the stalled car, but it hit the curb and bounced back across the road and collided with plaintiff's car. Only seconds before the collision, the car had been a part of traffic. It rolled into the intersection before stalling. The plaintiff restarted the engine, and she would have immediately resumed her journey but for the collision.[5]

Hence, the trial court erred in hypothesizing in Instruction No. 7 that Austin failed to yield the right-of-way to the tow trucks. No evidence supported the hypothesis.

Including the hypothesis in the instruction prejudiced the Austins by according too much weight to the tow trucks' status as emergency vehicles. The only significance of the tow trucks' being accorded emergency vehicle status was that they had a right to park on the roadway and to block a traffic lane. *See* § 304.022.4(2)(a). The Austins did not contest the legality of the tow trucks' being parked on the highway. By couching the hypothetical in terms of failing to yield to the tow trucks, it granted them an undue imprimatur of legality for all their acts. The instruction permitted the jury to conclude that even if Austin exercised a careful lookout, it still could assess him with fault for failing to "yield" to the tow trucks. It potentially suggested that Kruse and O'Hare had a right to block the highway, as drivers of emergency vehicles, without exercising the highest degree of care. Hence, we reverse the trial court's judgment and remand for a new trial.

All concur.

---

**4.** We added the emphasis in our quotations of § 304.022.

**5.** For a similar set of facts in which the court refused to apply the right-of-way rule, see *Cope v.*

*Thompson,* 534 S.W.2d 641, 648–49 (Mo.App. 1976), overruled on other grounds by *Karashin v. Haggard Hauling & Rigging, Inc.,* 653 S.W.2d 203 (Mo. banc 1983).